Mitra Ebadolahi (SBA 275157)
David Loy (SBA 229235)
ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187
mebadolahi@aclusandiego.org

Anne Lai (SBA 295394)
University of California, Irvine School of Law
Immigrant Rights Clinic
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
alai@law.uci.edu

Adrienna Wong (SBA 282026)
Belinda Escobosa Helzer (SBA 214178)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
225 W. Hospitality Lane Suite #211
San Bernardino, CA 92408
Telephone: (909) 380-7510 ext. 111
awong@aclusocal.org
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| American Civil Liberties Union of San Diego and Imperial Counties, American Civil Liberties Union of Southern California, Anne Lai and Sameer Ashar, <br><br> Plaintiffs, <br><br> v. <br><br> United States Department of Homeland Security, United States Customs and Border Protection, <br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief, seeking the immediate processing and release of agency records unlawfully withheld by Defendants United States Department of Homeland Security ("DHS") and United States Customs and Border Protection ("CBP") in response to a FOIA request properly made by Plaintiffs American Civil Liberties Union of San Diego and Imperial Counties ("ACLU-SDIC"), American Civil Liberties Union of Southern California ("ACLU-SoCal"), and University of California, Irvine ("UCI") School of Law Immigrant Rights Clinic ("IRC") professors Anne Lai and Sameer Ashar.

2. On July 3, 2014, Plaintiffs submitted a FOIA request to both DHS and CBP, seeking records related to U.S. Border Patrol's "roving patrol" operations in the San Diego and El Centro Sectors, including relevant agency policies, stop data, and complaint records.[1]  A copy of the request sent to DHS is attached hereto as Exhibit A.  A copy of the request sent to CBP is attached hereto as Exhibit B.

3. Plaintiffs seek the requested records in order to shed light on Border Patrol's extensive but largely opaque "roving patrol" operations.  To date, and long past the statutory deadline to respond, Defendants have provided no response to Plaintiffs' request.

4. Plaintiffs now file suit under FOIA for declaratory and injunctive relief, seeking the immediate disclosure of the requested records.

---

[1] U.S. Border Patrol's San Diego Sector includes Imperial Beach Station, Brown Field Station, Campo Station, San Clemente Station, El Cajon Station, Theodore L. Newton, Jr. and George F. Azrak (Murrieta) Station, Chula Vista Station, and Boulevard Station.  El Centro Sector includes El Centro Station, Calexico Station, Riverside Station, and Indio Station.  *See* U.S. Customs and Border Protection, Border Patrol Sectors, http://1.usa.gov/1lxpfAT (last visited Feb. 8, 2015).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the FOIA claim and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and (a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

6. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e). Plaintiffs Lai and Ashar have their principal place of business in Irvine, California. Plaintiff ACLU-SoCal has its principal place of business in Los Angeles, California.

7. Because Defendants DHS and CBP both failed to respond to Plaintiffs' FOIA Request in the time allotted by the statute, *see* 5 U.S.C. § 552(a)(6)(A)(i), Plaintiffs have constructively exhausted all administrative remedies and are entitled to file suit with this Court to enforce compliance with FOIA. *See* 5 U.S.C. § 552(a)(4)(B), (a)(6)(C).

## PARTIES

8. Plaintiffs ACLU-SDIC and ACLU-SoCal are local affiliates of the American Civil Liberties Union ("National ACLU"). Both the ACLU-SDIC and the ACLU-SoCal are non-profit, nonpartisan 26 U.S.C. § 501(c)(4) organizations dedicated to the constitutional principles of liberty and equality. The ACLU-SDIC is located in San Diego, California. The ACLU-SoCal has offices in Los Angeles, San Bernardino, and Santa Ana, and its principal place of business is in this district.

9. The ACLU is committed to ensuring that the American government complies with the Constitution and laws in matters that affect civil liberties and human rights. The ACLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights.

10. Dissemination of information to the public about actual or alleged government activity is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes a continuously updated blog, newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee through the ACLU's public education department and website. The websites of the national ACLU (www.aclu.org), ACLU-SDIC (www.aclusandiego.org), and ACLU-SoCal (www.aclusocal.org) each address civil rights and civil liberties issues in depth, provide features on civil rights and civil liberties issues in the news, and contain many thousands of documents relating to the issues on which the ACLU is focused. These websites also include features highlighting information obtained through the FOIA process as well as analysis of that information. Content from each of these websites often appears on the others, and the websites often link to content shown on the others.

11. Professors Lai and Ashar are faculty at UCI School of Law, located in Orange County, California, where they teach and conduct scholarly research in the area of immigrant rights. Together, they also direct the Immigrant Rights Clinic. IRC provides pro bono legal services to clients on immigration, employment and civil rights matters. Students work under faculty supervisors who are licensed attorneys. IRC also engages in non-litigation advocacy work and

community education to advance immigrants' rights. For example, IRC has produced research reports and commentary on immigrants' rights issues, which it makes available to the public at no cost on its website, www.law.uci.edu/academics/real-life-learning/clinics/immigrant-rights.html.

12. Defendant DHS is a Department of the Executive Branch of the United States government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

13. Defendant CBP is a component of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). It is headquartered in Washington, D.C. and has field offices throughout the country.

**FACTUAL BACKGROUND**

14. The incidence of civil rights violations associated with Border Patrol's interior enforcement operations, which include interior checkpoints and "roving patrol" stops, is a matter of pressing public concern. Since 2006, CBP's budget has more than doubled, from $6 billion to $12.9 billion in Fiscal Year 2014. In the same time period, the U.S. Border Patrol—a sub-agency within CBP—has nearly doubled in size, from approximately 12,000 agents to over 21,000 agents today.[2] Simultaneously, reports of Border Patrol abuses along the U.S.-Mexico border and throughout the interior of the United States have increased.

15. DHS oversight agencies have not kept pace with Border Patrol's rapid growth and are ill-equipped to provide transparent and effective agency training, oversight, and accountability for rights violations by agents. That this is true is evident from these oversight agencies' failure to respond to allegations of

---

[2] The U.S. Border Patrol "is the mobile, uniformed law enforcement arm of U.S. Customs and Border Protection within the Department of Homeland Security responsible for securing U.S. borders between ports of entry." *See* U.S. Customs and Border Protection, Along U.S. Borders, http://1.usa.gov/UIaKFe (last visited Feb. 8, 2015).

rights violations in any meaningful way. To cite just one example, the ACLU is still waiting for a substantive response to a civil rights complaint, filed on May 9, 2012 with DHS's Office of Inspector General ("OIG") and DHS's Office of Civil Rights and Civil Liberties ("CRCL"), on behalf of eleven individuals reporting various abuses by CBP officials at southern Ports of Entry.[3] Other organizations have reported similar problems.[4]

16. The scope of Border Patrol's authority to conduct interior enforcement operations is defined by federal statute and regulations, as interpreted by the federal courts and bounded by the Constitution. Border Patrol has authority to conduct certain warrantless stops and seizures within "a reasonable distance" of the border. *See* 8 U.S.C. § 1357(a)(3). That distance is defined by decades-old regulations to be "100 air miles" from any external boundary, including coastal boundaries. *See* 8 C.F.R. § 287.1(b); *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 882–83 (1975) ("The only formal limitation on that discretion [to stop vehicles] appears to be the administrative regulation defining the term 'reasonable distance' . . . to mean within 100 air miles from the border."). Today, this encompasses roughly two-thirds of the U.S. population; nine of our ten largest cities; and the entirety of several states.[5]

---

[3] *See* ACLU SOUTHERN BORDER AFFILIATES, COMPLAINT AND REQUEST FOR INVESTIGATION, May 9, 2012, *available at* http://bit.ly/1ru8f49.

[4] *See generally* AMERICAN IMMIGRATION COUNCIL, NO ACTION TAKEN: LACK OF CBP ACCOUNTABILITY IN RESPONDING TO COMPLAINTS OF ABUSE (2014), *available at* http://bit.ly/SwNbye.

[5] States that lie entirely or almost entirely within this area include Connecticut, Delaware, Florida, Hawaii, Maine, Massachusetts, New Hampshire, New Jersey, New York, Rhode Island, and Vermont. Nine of the ten largest metropolitan areas, as determined by the 2010 U.S. Census, also fall within this zone: New York City, Los Angeles, Chicago, Houston, Philadelphia, Phoenix, San Antonio, San Diego, and San Jose. *See* UNITED STATES CENSUS 2010, INTERACTIVE POPULATION MAP, http://1.usa.gov/1qF0Wsx (last visited Feb. 8, 2015); *see also* American Civil Liberties Union, *Know Your Rights: The Government's 100-Mile "Border" Zone—Map*, http://bit.ly/1fZZQ0h (last visited Feb. 8, 2015).

17. There is little publicly-available information regarding the extent or impact of Border Patrol roving patrol operations, or regarding Border Patrol agents' respect for these regulatory limitations on their authority.[6] In Southern California, Border Patrol agents are present throughout a number of both major metropolitan and rural areas a considerable distance from the U.S.-Mexico border. For example, Plaintiffs have received reports of Border Patrol agents stopping farm workers and local residents in Fallbook, CA (seventy miles north of the U.S.-Mexico border) and in Laguna Beach, CA (almost ninety miles north of the U.S.-Mexico border).

18. For decades, federal judges have expressed concern that such interior operations result in widespread rights violations.[7] Indeed, available evidence

---

[6] *See, e.g.*, Lorne Matalon, *Texas Court Case Challenges Border Patrol on Roving, Racial Profiling*, KPBS, Nov. 13, 2014, *available at* http://bit.ly/1vzDbXd ("[A] veteran agent's deposition showed the agent had pulled over work crews far from the border. But the agent said only half the people stopped were arrested. That implies that many U.S. citizens and others with the legal right to live and work in the United States were also stopped."); Jeremy Schwartz, *Border Patrol Makes Many Arrests Deep in the Heart of Texas*, Austin American-Statesman, Nov. 1, 2014, *available at* http://atxne.ws/1yOpDmf ("In San Angelo, 130 miles from the border, roving patrols constituted the principal activity of agents, according to Border Patrol agent John Finney, whose 2012 deposition in a deportation court case provides a rare description of the agency's otherwise hidden operations. . . . Finney estimated that 'a little better than 50 percent' of stops based on such reasonable suspicion were of undocumented immigrants and so resulted in arrests . . . .").

[7] *See, e.g.*, *United States v. Soyland*, 3 F.3d 1312, 1316, 1320 (9th Cir. 1993) (Kozinski, J., dissenting) ("There's reason to suspect the agents working these checkpoints are looking for more than illegal aliens. If this is true, it subverts the rationale of [*United States v. Martinez-Fuerte*, 428 U.S. 543 (1976)] and turns a legitimate administrative search into a massive violation of the Fourth Amendment . . . . Given the strong hints that the Constitution is being routinely violated at these checkpoints, we owe it to ourselves and the public we serve to look into the matter. Even without an order of this court or the district court, the Department of Justice would be well-advised to establish the bona fides of these checkpoints . . . ."); *United States v. Garcia*, 732 F.2d 1221, 1229 (5th Cir. 1984) (Tate, J., dissenting) ("Quite unfortunately, we have the opportunity only to review the successful guesses of these agents; we are never presented with the unconstitutionally intrusive stops of Hispanic residents and citizens that do not result in an arrest. Differentiating the United States from police states of past history and the present, our Constitution in its Fourth Amendment prohibition against unreasonable searches protects all our residents, whether middle-class and well-dressed or poor and disheveled, from arbitrary stop by governmental enforcement agents in our travel upon the highways of this nation.").

suggests that Border Patrol is engaged in unlawful activities throughout the southwest border region and far into the U.S. interior. For example, the ACLU of Arizona filed a complaint in October 2013 on behalf of five Arizona residents, each of whom was stopped and detained by Border Patrol a considerable distance from the border.[8] In one of those cases, agents threatened to cut a woman out of her seatbelt in front of her two young children after she questioned the basis for the stop. The complaint documented several other instances where individuals were removed forcibly from their vehicles and subjected to unauthorized searches.

19. Border Patrol does not release stop data or other information related to roving patrol operations; what little is publicly known has been revealed through litigation and FOIA requests. For example, in September 2013, the ACLU of Washington settled a class action lawsuit challenging roving patrol practices on the Olympic Peninsula on behalf of several victims of racial profiling. Pursuant to that settlement, Border Patrol agreed to re-train agents on their obligations under the Fourth Amendment and to share stop data with the ACLU.[9] In January 2013, following extensive FOIA litigation, Families for Freedom and New York University issued a report disclosing an "incentives program" for Border Patrol agents and the agency's widespread practice of arresting individuals lawfully present in the United States.[10] A prior report based on the same FOIA

---

[8] *See* ACLU of Arizona, Administrative Complaint and Request for Investigation of Unlawful Roving Patrol Stops by U.S. Border Patrol in Southern Arizona Including Unlawful Search and Seizure, Racial Profiling, Trespassing, Excessive Force, and Destruction of Personal Property 2–4 (Oct. 9, 2013), *available at* http://bit.ly/1oOBYEz.

[9] *See* Complaint, Sanchez v. U.S. Office of Border Patrol (W.D. Wa. Apr. 26, 2012) (No. 2:12-cv-00735), *available at* http://bit.ly/N7xtpO; Settlement Agreement, Sanchez v. U.S. Border Patrol (W.D. Wa. 2012) (No. 2:12-cv-00735), *available at* http://bit.ly/1j9wUXP; *see also, e.g.*, Manuel Valdes, *ACLU, Immigrant Groups to Keep an Eye on U.S. Border Patrol After Profiling-case Win*, Wash. Post, Sept. 24, 2013, *available at* http://wapo.st/1oODDdp.

[10] *See* FAMILIES FOR FREEDOM & NYU LAW IMMIGRANT RIGHTS CLINIC, UNCOVERING USBP: BONUS PROGRAMS FOR UNITED STATES BORDER PATROL AGENTS AND THE ARREST OF LAWFULLY PRESENT INDIVIDUALS (Jan. 2013), *available at* http://bit.ly/1bjjh8h.

1  request examined thousands of Border Patrol stops aboard public transportation in
2  upstate New York.[11] The vast majority of those stops occurred far from the actual
3  border, with only one percent resulting in initiation of removal proceedings; many
4  involved violations of agency guidelines, including improper reliance on race and
5  arrests of lawfully present individuals.

6  20. The failure of DHS and CBP to produce the documents requested by
7  Plaintiffs violates the FOIA and impedes Plaintiffs' efforts to educate the public
8  on the many questions that remain regarding the full extent and impact of wide-
9  ranging roving patrol operations conducted by the largest law enforcement agency
10 in the country.

**FOIA REQUEST**

12 21. As noted, on July 3, 2014, Plaintiffs submitted a FOIA request to
13 both DHS and CBP, seeking records related to U.S. Border Patrol's "roving
14 patrol" operations in the San Diego and El Centro Sectors, including relevant
15 agency policies, stop data, and complaint records. True and correct copies of
16 these requests are attached hereto as Exhibits A and B, and thereby incorporated
17 by reference.

18 22. Plaintiffs sought expedited processing on the ground that there is a
19 "compelling need" for release of the requested records, because the information
20 therein is urgently needed by organizations primarily engaged in disseminating
21 information to inform the public about actual or alleged federal government
22 activity (that is, CBP's roving patrol policies and practices). *See* 5 U.S.C.
23 § 552(a)(6)(E); *see also* 6 C.F.R. § 5.5(d)(1)(ii).

24 23. Plaintiffs also sought a waiver of search, review, and reproduction
25 fees on the grounds that disclosure of the requested records "is in the public

---

[11] *See* NEW YORK CIVIL LIBERTIES UNION, NYU LAW IMMIGRANT RIGHTS CLINIC, & FAMILIES FOR FREEDOM, JUSTICE DERAILED (Nov. 2011), *available at* http://bit.ly/N7A03q.

interest because it is likely to contribute significantly to public understanding of the operations or activities of the government," and disclosure is "not primarily in the commercial interest of the requester." *See* 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k)(1). Plaintiffs further sought a waiver of search and review fees on the grounds that the ACLU qualifies as a "representative of the news media" and the requested records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii); 6 C.F.R. § 5.11(d)(1). Finally, Plaintiffs sought a waiver of search and review fees on the grounds that Professors Lai and Ashar qualify as researchers at an educational institution. *See* 6 C.F.R. § 5.11(c)(1)(i), (d)(1); *see also* 6 C.F.R. § 5.11(b)(4) (defining "educational institution").

24. In addition to submitting the Request to DHS via email at foia@dhs.gov and to CBP through the agency's online FOIA request system, Plaintiffs mailed hard copies of the Request to each agency via certified U.S. mail on July 3, 2014. *See* Exhibit C (true and correct copies of Plaintiffs' certified mail receipts).

25. According to the U.S. Postal Service's tracking system, DHS received the mailed copy of Plaintiffs' Request on July 9, 2014. According to the U.S. Postal Service's tracking system, CBP also received the mailed copy of Plaintiffs' Request on July 9, 2014.

26. The ten-day statutory period to respond to Plaintiffs' request for expedited processing elapsed without any decision from either DHS or CBP. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); *see also* 6 C.F.R. § 5.5(d)(4).

27. The twenty-day statutory period to respond to Plaintiffs' Request has elapsed with no response or determination from either DHS or CBP on whether to withhold or disclose any or all of the requested documents in whole or in part. *See* 5 U.S.C. § 552(a)(6)(A)(i).

28. DHS and CBP have neither released any of the requested records nor explained their failure to do so.

**CLAIMS FOR RELIEF**

29. Plaintiffs reallege and incorporate, as though fully set forth herein, each and every allegation contained in the above paragraphs.

30. Defendants' failure to make a reasonable effort to search for the requested records violates FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.4.

31. Defendants' failure to promptly make available the requested records violates FOIA, 5 U.S.C. § 552(a)(6)(A), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.6.

32. Defendants' failure to grant Plaintiffs' request for expedited processing as to the Request violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.5(d).

33. Defendants' failure to grant Plaintiffs' request for a waiver of search, review, and duplication fees as to the Request violates FOIA, 5 U.S.C. § 552(a)(4), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.11(k).

34. Defendants' failure to grant Plaintiffs' request for a limitation of fees as to the Request violates FOIA, 5 U.S.C. § 552(a)(4), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.11(d).

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendants' failure to timely respond to Plaintiffs' FOIA Request; to grant expedited processing; to conduct a reasonable search; to waive or limit search, review, and duplication fees; and/or to disclose the requested records is unlawful;

B. Issue an injunction ordering Defendants to immediately disclose the requested records and to make copies available to Plaintiffs at no charge;

C. Award Plaintiffs costs and reasonable attorneys' fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

D. Grant such other relief as the Court may deem just and proper.

DATED this 10th day of February, 2015.

Respectfully submitted,

ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES

By **/s/ Mitra Ebadolahi**
Border Litigation Project
Staff Attorney

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

Adrienna Wong
Staff Attorney

UNIVERSITY OF CALIFORNIA, IRVINE SCHOOL OF LAW – IMMIGRANT RIGHTS CLINIC

Anne Lai
Supervising Attorney

*Attorneys for Plaintiffs*