Mitra Ebadolahi (SBA 275157)
David Loy (SBA 229235)
ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187
mebadolahi@aclusandiego.org
davidloy@aclusandiego.org

Anne Lai (SBA 295394)
University of California, Irvine School of Law
Immigrant Rights Clinic
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
alai@law.uci.edu

Adrienna Wong (SBA 282026)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500 ext. 204
awong@aclusocal.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| American Civil Liberties Union of San Diego and Imperial Counties, American Civil Liberties Union of Southern California, Anne Lai and Sameer Ashar, Plaintiffs, <br><br> v. <br><br> United States Department of Homeland Security, United States Customs and Border Protection, Defendants. | Case No.: 8:15-cv-00229-JLS-RNB <br><br> **PLAINTIFFS' NOTICE OF MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT** <br><br> **Date: January 27, 2017** <br> **Time: 2:30 p.m.** <br> **Judge: Hon. Josephine L. Staton** <br> **Courtroom: 10A** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 27, 2017, at 2:30 p.m. or as soon thereafter as the matter may be heard, Plaintiffs the American Civil Liberties Union

of San Diego and Imperial Counties ("ACLU SDIC"), the American Civil Liberties Union of Southern California ("ACLU SoCal"), Annie Lai and Sameer Ashar (collectively, "Plaintiffs") will, and do hereby, cross move for summary judgment pursuant to Federal Rule of Civil Procedure 56 concerning the sufficiency of Defendants' response to Plaintiffs' request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.   The hearing will take place before the Honorable Josephine L. Staton, United States District Judge, in Courtroom 10A, Ronald Reagan Federal Building & U.S. Courthouse, 411 West Fourth Street, Santa Ana, CA 92701.

In support of this motion, Plaintiffs submit the accompanying Memorandum of Points and Authorities, Plaintiffs' Statement of Genuine Issues of Material Fact, Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law, Declaration of Mitra Ebadolahi, Declaration of James Tomsheck, Declaration of Christopher Rickerd, Declaration of Trina Realmuto, and Proposed Judgment.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place via discussions and correspondence between December 2015 and July 2016.

DATED:  October 14, 2016          Respectfully submitted,

ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES

**By /s/ Mitra Ebadolahi**
Border Litigation Project
Staff Attorney

ii

1
2

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………….......(v-x)

LIST OF ACRONYMS……………………………………………..(xi)

INTRODUCTION………………………………………………………..1

I.   BACKGROUND…………………………………………………...1

   A.   Border Patrol's "Roving Patrol" Operations…………………………1

   B.   Plaintiffs' FOIA Request and Defendants' Productions to Date……...3

II.   ARGUMENT……………………………………………………….4

   A. Purpose of FOIA and Governing Legal Principles………………..4

   B. Standard of Review……………………………………………….5

   C. Defendants Have Failed to Conduct an Adequate Search…………6

   D. Defendants Are Unlawfully Withholding the CBP Enforcement
       Law Course………………………………………………………11

      1. FOIA Exemption 5 Does Not Apply to the ELC……………..12

         a. Defendants' Submissions Indicate the ELC is
             "Working Law" That Must Be Disclosed………………....12

         b. Defendants Have Not Established that Either
             the Work Product Doctrine or the Attorney-Client
             Privilege Applies to the ELC. ……………….....................14

            i.   The ELC is Not Attorney-Client Privileged………..15

            ii.   The ELC is Not Work Product……………………..17

      2. FOIA Exemption 7(E) Does Not Apply to the ELC…………19

   E. CBP Has Failed to Establish that Other Responsive
       Records Are Exempt Under 7(E)………………………………21

      1. The Record Is Inadequate to Evaluate Whether
          Exemption 7(E) Applies to CBP Policy Memoranda…………22

      2. The Record Is Inadequate As To Other CBP Exemption 7(E)
          Redactions…………………………………………………..23

         a. Civilian Complaints Against CBP…………………………24

    b.  Name Designated By Border Patrol to Areas
        of Operations……………………………………………... 25

    c.  Guidance Regarding Prosecutions, Programs, and Vehicle
        Seizures…………………………………………………25

F.  Defendants Have Not Disclosed Reasonably
    Segregable Material………………………………………………26

G.  Defendants Cannot Withhold Names of CBP Officials Pursuant to
    FOIA Exemptions 6 and 7(C)………………………………… 28

    1.  Defendants Fail to Satisfy Exemption 6's Threshold
        Requirement…………………………………………………..29

    2.  Defendants Fail to Satisfy Exemption 7's Threshold
        Requirement…………………………………………………..30

    3.  Disclosure of the Withheld Names Would Not Cause An
        Unwarranted Invasion of Privacy……………………………..32

    4.  The Public Interest In Disclosure Outweighs Any Minimal
        Privacy Interests……………………………………………34

CONCLUSION………………………………………………………35

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3

*ACLU v. FBI*, No. C 12-03728 SI, 2013 WL 3346845 (N.D. Cal. July
   1, 2013) ..........................................................................................20

*ACLU of N. Cal. v. DOJ*, 70 F. Supp. 3d 1018 (N.D. Cal. 2014) ...................12, 26

*Aguirre v. SEC*, 551 F. Supp. 2d 33 (D.D.C. 2008) ..........................................30

*AIC v. DHS*, 950 F. Supp. 2d 221 (D.D.C. 2013)..............................................10

*Air Force v. Rose*, 425 U.S. 352 (1976) ...........................................................5

*Animal Legal Def. Fund v. FDA*, F.3d, 2016 WL 4578362
   (9th Cir. 2016) ....................................................................21, 33

*Antonelli v. ATF*, 555 F. Supp. 2d 16 (D.D.C. 2008)..........................................30

*Antonelli v. ATF*, No. CIV.A. 04-1180 CKK, 2005 WL 3276222
   (D.D.C. Aug. 16, 2005) ...........................................................31

*Assembly of St. of Cal. v. Commerce*, 968 F.2d 916 (9th Cir. 1992) ...................12

*Assoc. Press v. Defense*, 554 F.3d 274 (2d Cir. 2009) ..........................................32

*Bishop v. DHS*, 45 F. Supp. 3d 380 (S.D.N.Y. 2014) ..........................................19

*Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2011) ................................................23

*Brennan Ctr. for Just. v. DOJ*, 697 F.3d 184 (2d Cir. 2012) ........................12, 13

*Cameranesi v. Defense*, ____ F.3d ____, 2016 WL 5827478
   (9th Cir. 2016) ..................................................................33, 34

*Can. Javelin, Ltd. v. SEC*, 501 F. Supp. 898 (D.D.C. 1980)................................32

*Casa de Md., Inc. v. DHS*, No. 10-1264 WL 288684
   (4th Cir. Jan. 31, 2011)..........................................................34

*Castaneda v. U.S.*, 757 F.2d 1010 (9th Cir.) ........................................................32

*Chang v. Navy*, 314 F. Supp. 2d 35 (D.D.C. 2004)................................................34

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Church of Scientology v. Army*, 611 F.2d 738 (9th Cir. 1979) ............................21

*Coastal States Gas Corp. v. Energy*, 617 F.2d 854 (D.C. Cir. 1980) .............13-18

*Coleman v. Lappin*, 535 F. Supp. 2d 96 (D.D.C. 2008) ........................................31

*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) ..................................................23

*Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124
    (D.C. Cir. 1987)...........................................................................................17, 18

*Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d 65 (D.D.C. 2008) ...................16

*EPA v. Mink*, 410 U.S. 73 (1973) ..........................................................................5

*Families for Freedom v. CBP*, 837 F. Supp. 2d 287 (S.D.N.Y. 2011) ................29

*Ferguson v. Kelley*, 448 F. Supp. 919 (N.D. Ill. 1977) ...................................32, 33

*Gordon v. FBI*, 390 F. Supp. 2d 897 (N.D. Cal. 2004) ("*Gordon I*") .................30

*Gordon v. FBI*, 388 F. Supp. 2d 1028 (N.D. Cal. 2005) ("*Gordon II*")...............30

*Greenpeace U.S.A., Inc. v. EPA*, 735 F. Supp. 13 (D.D.C. 1990)........................31

*Hamdan v. DOJ*, 797 F.3d 759 (9th Cir. 2015) .........................................22, 23, 25

*Hardy v. Defense*, No. CV-99-523-TUC-FRZ, 2001 WL 34354945
    (D. Ariz. Aug. 27, 2001)....................................................................................32

*Hickman v. Taylor*, 329 U.S. 495 (1947) .............................................................17

*Jefferson v. DOJ OPR*, 284 F.3d 172 (D.C. Cir. 2002)..................................24, 32

*Jud. Watch, Inc. v. DHS*, 598 F. Supp. 2d 93 (D.D.C. 2009)..............................34

*Jud. Watch, Inc. v. Navy*, 25 F. Supp. 3d 131 (D.D.C. 2014) .............................33

*Jurewicz v. Agriculture*, 891 F. Supp. 2d 147 (D.D.C. 2012) ............................28

*Kowack v. Forest Serv.*, 766 F.3d 1130 (9th Cir. 2014)........................................27

*L.A. Times Commc'ns, LLC v. Army*, 442 F. Supp. 2d 880
(C.D. Cal. 2006) ...........................................................5, 6, 11, 27

*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009) ............................................5

*Law. Comm. for Civ. Rts. of S.F. Bay Area v. Treasury*, 534 F. Supp.
2d 1126 (N.D. Cal. 2008) .............................................................8

*Law. Comm. for Hum. Rts. v. INS*, 721 F. Supp. 552 (S.D.N.Y. 1989) ..........30, 32

*Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246
(D.D.C. 2005) .........................................................................30, 32

*Lissner v. Customs Serv.*, 241 F.3d 1220 (9th Cir. 2001) .....................................32

*Maricopa Audubon Soc'y v. Forest Serv.*, 108 F.3d 1089
(9th Cir. 1997) ...........................................................................6, 11

*Maydak v. DOJ*, 362 F. Supp. 2d 323 (D.D.C. 2005) ............................................31

*Mead Data Central, Inc. v. Air Force*, 566 F.2d 242
(D.C. Cir. 1977) .........................................................................5, 14, 15, 26

*Milner v. Navy*, 131 S. Ct. 1259 (2011) .............................................................5, 18

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002) ...............28

*Nat'l Council of La Raza v. DOJ*, 411 F.3d 350 (2d. Cir. 2005) .........................12

*Nat'l Day Laborer Organizing Network v. ICE*, 877 F. Supp. 2d 87
(S.D.N.Y. 2012) ........................................................................6, 7, 8, 9, 11, 15

*Nat'l Immigr. Project v. DHS*, 842 F. Supp. 2d 720
(S.D.N.Y. 2012) ........................................................................16

*Nation Mag. Wash. Bureau v. Customs Serv.*, 71 F.3d 885
(D.C. Cir. 1995) .........................................................................6, 8, 9

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) .................................4

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) .............................12, 13, 14

*Oglesby v. Army*, 920 F.2d 57 (D.C. Cir. 1990) .................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Patterson v. IRS*, 56 F.3d 832 (7th Cir. 1995) ........................................................ 24

*Providence J. Co. v. Army*, 781 F. Supp. 878 (D.R.I. 1991) ................................. 30

*Air Force v. Rose*, 425 U.S. 352 (1976) ................................................................ 5

*Rosenfeld v. DOJ*, 57 F.3d 803 (9th Cir. 1995) ................................. 19, 20, 23, 24

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ............................ 18

*Sakamoto v. EPA*, 443 F. Supp. 2d 1182 (N.D. Cal. 2006) .................................. 24

*Schiller v. NLRB*, 964 F.2d 1205 (D.C. Cir. 1992) ........................................ 18, 27

*Schmidt v. Air Force*, No. 06-3069, 2007 WL 2812148
   (C.D. Ill. Sept. 20, 2007) ................................................................................... 35

*Sealed Case*, 146 F.3d 881 (D.C. Cir. 1998) ...................................................... 18

*Shannahan v. IRS*, 672 F.3d 1142 (9th Cir. 2012) .............................................. 14

*State v. Ray*, 502 U.S. 164 (1991) ...................................................................... 28

*Stern v. FBI*, 737 F.2d 84 (D.C. Cir. 1984) ....................................................... 34

*Stonehill v. IRS*, 534 F. Supp. 2d 1 (D.D.C. 2008) ............................................ 33

*Sullivan v. Veterans Admin.*, 617 F. Supp. 258 (D.D.C. 1985) ........................... 32

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) ..................................... 12, 13

*U.S. v. Soto-Zuniga*, ___ F.3d ____, 2016 WL 4932319 (9th Cir. 2016) .............. 2

*United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49 (D.D.C. 2009) .......... 31, 32, 33

*Upjohn v. U.S.*, 449 U.S. 383 (1981) .................................................................. 15

*Valencia-Lucena v. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ................... 9, 11

*Varville v. Rubin*, No. CIV. 3:96CV00629AVC, 1998 WL 681438
   (D. Conn. Aug. 18, 1998) .................................................................................. 31

*Weiner v. FBI*, 943 F.2d 972 (9th Cir. 1991) ................................................ 14, 21

*Weisberg v. DOJ*, 705 F.2d 1344 (D.C. Cir. 1983) .................................................11

*Weisberg v. DOJ*, 745 F.2d 1476 (D.C. Cir. 1984) ...................................................6

*Wilkinson v. FBI*, 633 F. Supp. 336 (C.D. Cal. 1986) ...........................................21

*Yonemoto v. Veterans Affairs*, 686 F.3d 681 (9th Cir. 2011) .................................33

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) ......................................................6

## **STATUTES**

5 U.S.C. § 504.........................................................................................................18

5 U.S.C. § 552.........................................................................................................(ii)

5 U.S.C. § 552(a)(2)(A) .........................................................................................13

5 U.S.C. § 552(a)(2)(B) .........................................................................................14

5 U.S.C. § 552(a)(3)(A) ...........................................................................................5

5 U.S.C. § 552(a)(3)(C)–(D) ....................................................................................5

5 U.S.C. § 552(a)(4)(B) ......................................................................................5, 11

5 U.S.C. § 552(a)(6)(A)(i) ........................................................................................5

5 U.S.C. § 552(b) ...............................................................................................5, 26

5 U.S.C. § 552(b)(7) ...............................................................................................22

5 U.S.C. § 552(b)(7)(C) .....................................................................................28, 29

5 U.S.C. § 552(b)(7)(E) .....................................................................................19, 20

8 C.F.R. § 287.1(b) ...................................................................................................1

8 U.S.C. § 1357(a)(3) ...............................................................................................1

## **RULES**

L.R. 7-3 ......................................................................................................................ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

x

# LIST OF ACRONYMS

| | |
|---|---|
| ENFORCE | CBP Database |
| ELC | CBP Enforcement Law Course |
| LER | CBP HRM Division of Labor and Employee Relations |
| OES | CBP OC Office of Executive Secretariat |
| SITROOM | CBP OC Situation Room |
| HRM | CBP Office of Human Resources Management |
| IA | CBP Office of Internal Affairs |
| OPA | CBP Office of Public Affairs |
| OC | CBP Office of the Commissioner |
| CRCL | DHS Office of Civil Rights and Civil Liberties |
| OIG | DHS Office of Inspector General |
| AUD | DHS OIG Office of Audits |
| ISP | DHS OIG Office of Inspections |
| IQO | DHS OIG Office of Integrity and Quality Oversight |
| INV | DHS OIG Office of Investigations |
| OPR | ICE Office of Professional Responsibility |
| JICMS | Joint Integrity Case Management System DHS CBP IA System of Record |
| CBP | U.S. Customs and Border Protection |
| DHS | U.S. Department of Homeland Security |
| ICE | U.S. Immigration and Customs Enforcement |

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

U.S. Customs and Border Protection ("CBP") is the largest law enforcement agency in America.[1]  It is also one of the least accountable and most opaque.[2]  To improve the public's understanding of CBP's interior enforcement operations—specifically, U.S. Border Patrol's "roving patrols," which often occur far from any actual border—Plaintiffs submitted a Freedom of Information Act ("FOIA") request to CBP and its parent agency, the Department of Homeland Security ("DHS"), in July 2014.  Defendants ignored the request, forcing Plaintiffs to file this lawsuit in February 2015.  After a meet and confer process, the parties narrowed the issues for summary judgment.  Because Defendants have neither conducted a reasonable search nor demonstrated that the information withheld from Plaintiffs is exempt from disclosure, Plaintiffs respectfully ask this Court to deny Defendants' motion for summary judgment and to grant Plaintiffs' cross-motion.

## I.     BACKGROUND

### A.     Border Patrol's "Roving Patrol" Operations.

The Border Patrol, a component of CBP, is authorized by regulation to conduct certain warrantless stops and seizures up to 100 air miles from any external U.S. boundary, including coastal boundaries.  *See* 8 U.S.C. § 1357(a)(3); 8 C.F.R. § 287.1(b).  This area encompasses roughly two-thirds of the U.S. population; nine of America's ten largest cities; and the entirety of several states.[3]

---

[1] *See, e.g.*, Laura Strickler, *Largest U.S. Police Agency Takes Steps to Police Itself*, CBS NEWS (Sept. 18, 2014), *available at* http://cbsn.ws/2dkWugv.

[2] *See, e.g.*, Andrew Becker, *Here's How Experts Say Border Patrol Must Stop Corruption and Killing*, REVEAL (CTR. FOR INVESTIGATIVE REPORTING), Mar. 15, 2016, *available at* http://bit.ly/2bfpFi8; Daniel Denvir, *Curbing the Unchecked Power of the U.S. Border Patrol*, CITY LAB, Oct. 30, 2015, http://bit.ly/1WrHOPC; Garrett M. Graff, *The Green Monster: How the Border Patrol Became America's Most Out-of-Control Law Enforcement Agency*, POLITICO (Nov./Dec. 2014), *available at* http://politi.co/29xEst3.

[3] *See* U.S. Census 2010, Interactive Population Map, http://1.usa.gov/1qF0Wsx (last visited Oct. 13, 2016); ACLU, Know Your Rights: The Government's 100-Mile

Over the past twenty years, the Border Patrol has more than quadrupled in size; today, there are nearly 21,000 agents throughout the United States.[4]  As the agency has grown, so too have complaints of abuses; in recent years, the ACLU has documented numerous grievances from border residents subjected to extended detentions, unlawful searches, and other mistreatment.[5]

A growing number of government officials, including high-ranking CBP officials and national law enforcement experts, have criticized CBP's lack of transparency, oversight, and accountability.[6]  CBP's own Integrity Advisory Panel recently concluded that the agency's discipline system is "broken" and does not effectively deter agent misconduct.[7]  Federal judges also have expressed concern that Border Patrol's interior enforcement operations result in civil rights violations concealed from public scrutiny.[8]

Despite such critiques, relatively little is known about these operations' full extent or impact.  CBP does not release such basic information as data related to

---

"Border" Zone—Map, http://bit.ly/1fZZQ0h (last visited Oct. 13, 2016).

[4] U.S. Border Patrol, *Border Patrol Agent Staffing by Fiscal Year* (as of Sept. 19, 2015), *available at* http://bit.ly/1oIZwhP (last visited Oct. 13, 2016).

[5] *See, e.g.*, Complaint, Alton Jones v. U.S. Border Patrol Agent Hernandez et al., NO. 16CV1986W (S.D. Cal. Aug. 8, 2016), ECF No. 1; ACLU of Ariz. et al., Complaint and Request for Investigation Regarding Unlawful Searches and Seizures of Innocent Residents by Agents of U.S. Border Patrol, June 28, 2016, *available at* http://bit.ly/2bz3S9d.

[6] *See, e.g.*, PIVOTAL PRACTICES CONSULTING LLC, U.S. CBP COMPLAINTS & DISCIPLINE SYSTEMS REVIEW: PUBLIC REPORT OF FINDINGS & RECOMMENDATIONS 2–3, 12, 14 (Nov. 23, 2015), *available at* http://bit.ly/2cX4MZw (evaluating significant shortcomings in the CBP discipline system); Andrew Becker, *Ousted Chief Accuses Border Agency of Shooting Cover-ups, Corruption*, REVEAL: CTR. FOR INVESTIGATIVE REPORTING (Aug. 14, 2014), *available at* http://bit.ly/2boSEB0; POLICE EXECUTIVE RESEARCH FORUM, USE OF FORCE REVIEW: CASES & POLICIES 4–5, 7 (Feb. 2013), *available at* http://bit.ly/2dyavaZ.

[7] DHS HOMELAND SEC. ADVISORY COUNCIL, FINAL REPORT OF THE CBP INTEGRITY ADVISORY PANEL 21 (Mar. 15, 2016) [hereinafter HSAC FINAL REPORT], *available at* http://bit.ly/2cLO6o0.

[8] *See, e.g.*, *U.S. v. Soto-Zuniga*, ___ F.3d ____, 2016 WL 4932319 at *5–*6 (9th Cir. 2016); *U.S. v. Garcia*, 732 F.2d 1221, 1229 (5th Cir. 1984) (Tate, J., dissenting).

public complaints about Border Patrol misconduct or even the number of roving patrol stops per sector per quarter.[9]

To make matters worse, CBP is notorious for failing to timely share information about its practices and policies. *See generally* Realmuto Decl.; Rickerd Decl. Unlike many other federal agencies, CBP does not have a system in place to make proactive disclosures when it can be reasonably anticipated that there will be public interest in a particular item of information. Rickerd Decl. ¶ 4 & Ex. A at 6–7. Of all DHS component agencies, CBP has the longest processing time for "complex" FOIA requests (a median of 236 days, compared to the twenty contemplated by the FOIA statute). Rickerd Decl. ¶ 7. Often, CBP provides *no* response to a FOIA request until *after* litigation is commenced: no confirmation of receipt, no processing updates, and no interim responses. Rickerd Decl. ¶ 8 & Ex. A at 6. This is particularly troubling because most requesters lack the resources and expertise necessary to pursue federal litigation, and Congress did not enact FOIA to serve only litigators. The American public thus has access to little information about either CBP's interior enforcement activities or complaints against the agency for alleged misconduct, including civil rights violations.

**B.  Plaintiffs' FOIA Request and Defendants' Productions to Date.**

To illuminate CBP's extensive interior enforcement operations, Plaintiffs submitted a FOIA request to DHS and CBP in July 2014. The request specified ten categories of information, including legal memos, policies, and other information about roving patrol operations generally and searches and seizures specifically; audits and statistical data about roving patrols; organizational charts and information about key agency decisionmakers; memos and other information about Border Patrol's authority to conduct roving patrol stops based on actual or alleged

---

[9] *See, e.g.*, HSAC FINAL REPORT, *supra* note 7, at 23, 31–33 ("CBP's ability to intake, track, process and benefit from . . . a complaint system has been lacking.").

violations of local or state law; information related to state or local law enforcement involvement in roving patrol operations; individual records of stops, searches, and arrests; complaints related to roving patrol operations; and disciplinary records regarding alleged agent misconduct.  Ebadolahi Decl. ¶ 2 & Ex. A.

Defendants began producing responsive records only after Plaintiffs initiated this litigation.[10]  Plaintiffs have received records from four DHS entities: CBP, DHS Office of Civil Rights and Civil Liberties ("CRCL"), DHS Office of Inspector General ("OIG"), and U.S. Immigration and Customs Enforcement ("ICE").  The lion's share of Defendants' productions are CBP documents; the majority of these are incident forms.  *See* Decl. of Sabrina Burroughs ("Burroughs Decl."), ECF No. 40, Ex. B ("Vaughn I"), ECF No. 40-2.  The remainder of CBP's production includes memoranda, complaints, and correspondence.  *See* Burroughs Decl. Ex. D ("Vaughn II"), ECF No. 40-4.  The records produced to date include evidence of apparent civil rights violations and misconduct by CBP officials operating throughout Southern California.  Ebadolahi Decl. ¶ 23 & Ex. P.

Between December 2015 and June 2016, the parties exchanged correspondence to clarify and narrow the issues ultimately presented to this Court for decision.  Ebadolahi Decl. ¶ 6.

## II.   ARGUMENT

### A.   Purpose of FOIA and Governing Legal Principles.

Congress enacted FOIA to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The statute is designed "to pierce the veil of

---

[10] Although this Court set a November 2015 production deadline, approximately twenty percent of the records produced thus far were released between March and late June 2016, four to seven months after the production deadline and almost two years after Plaintiffs submitted their FOIA request.  Ebadolahi Decl. ¶ 5.

administrative secrecy and to open agency action to the light of public scrutiny." *Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). FOIA facilitates "access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973).

Upon receipt of a FOIA request, a federal agency "shall make the records promptly available," 5 U.S.C. § 552(a)(3)(A), and "shall make reasonable efforts to search for the records" responsive to a request. *Id.* § 552(a)(3)(C)–(D). Agencies must respond to FOIA requests within twenty business days of receipt. *Id.* § 552(a)(6)(A)(i).

The government must disclose responsive documents unless one or more of FOIA's limited exemptions apply. These exemptions are "narrowly construed." *Rose*, 425 U.S. at 361; *Milner v. Navy*, 131 S. Ct. 1259, 1265 (2011); *Mead Data Central, Inc. v. Air Force*, 566 F.2d 242, 259 (D.C. Cir. 1977). The government bears the burden of establishing that an exemption applies. *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). "Any reasonably segregable portion of a record shall be provided" to the FOIA requester. 5 U.S.C. § 552(b).

## B.    Standard of Review.

FOIA requires *de novo* review of an agency's response to a records request. 5 U.S.C. § 552(a)(4)(B). The "typical standard for summary judgment is not sufficient in a FOIA proceeding," which instead "generally requires a two-stage inquiry." *L.A. Times Commc'ns, LLC v. Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006) (quotation marks and citations omitted). First, the court "must determine whether the agency has met its burden of proving that it fully discharged its obligations under FOIA." *Id.* (citations omitted). Second, if so, the court "examines whether the agency has proven that the information it did not disclose

falls within one of the nine FOIA exemptions." *Id.* at 894.

"Courts must apply [the government's] burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims." *Maricopa Audubon Soc'y v. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quotation marks and citation omitted). For this reason, "the underlying facts and possible inferences are construed in favor of the FOIA requester." *L.A. Times*, 442 F. Supp. 2d at 894 (citations omitted).

### C. Defendants Have Failed to Conduct an Adequate Search.

Defendants have failed to conduct an adequate search because they: (1) imposed self-serving and unreasonable limits on the search terms used by each component agency searched; (2) unreasonably omitted key agency entities from their searches; and (3) at times, failed to specify which databases or systems of records were searched.

To "fully discharge[] its obligations under FOIA," the government must "demonstrat[e] that it has conducted a search reasonably calculated to uncover all relevant documents." *L.A. Times*, 442 F. Supp. 2d at 893 (citing *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). In evaluating a search, a court must view all facts "in the light most favorable to the requester." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *Zemansky*, 767 F.2d at 571 (same).

To show that it has conducted a sufficient search, the government's affidavits "must be reasonably detailed, setting forth the search terms and the type of search performed, and *averring that all files likely to contain responsive materials* (if such records exist) *were searched*." *Nation Mag. Wash. Bureau v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quotation marks, alteration and citation omitted; emphases added); *Nat'l Day Laborer Organizing Network v. ICE*, 877 F. Supp. 2d 87, 107–08 (S.D.N.Y. 2012) [hereinafter *NDLON*] (discussing detail required to

evaluate adequacy of agency searches when, given "electronic searches, custodians never actually look at the universe of documents they are searching").  Defendants have not satisfied this standard.

*First*, Defendants unjustifiably restricted their search terms.  Although Plaintiffs' request sought records relating to "roving vehicle *or pedestrian* stops," every component omitted "pedestrian" from its searches entirely, and most limited their searches just to iterations of the term "roving patrol."[11]  Civilians, however, do not use this term of art to refer to Border Patrol's interior enforcement operations— a fact understood within the defendant agencies.  Tomsheck Decl. ¶¶ 17–18.  Significantly, not one defendant entity included any of the following search terms: "complaint," "civil rights," "profiling," "force," "constitutional," or "misconduct"—even though Plaintiffs sought information pertaining to civilian complaints and official misconduct and asked Defendants to search using these terms.  Ebadolahi Decl. ¶¶ 7–9 & Exs. B–C.  These omissions are especially egregious for CRCL, OIG, and ICE's Office of Professional Responsibility ("OPR"), the three DHS entities responsible for investigating civil rights complaints and allegations of official misconduct.  *Compare* Tyrrell Decl. ¶ 8 (CRCL's "mission is to integrate civil rights and civil liberties into all DHS activities" and "investigat[e] and resolv[e] civil rights and civil liberties complaints filed by the public") *with id.* ¶ 13 (noting that CRCL's Compliance Branch used only terms "roving patrol," "El Centro," "Centro," "San Diego," and "Diego"); *compare* Marwaha Decl. ¶ 1 (OIG "conducts independent criminal, civil, and administrative investigations . . . to detect and deter waste, fraud, and abuse . . .") *with id.* ¶ 13 (Office of Audits search terms), *id.* ¶ 17 (Office of Inspections search

---

[11] Burroughs Decl. ¶¶ 11, 16, 20–24; Decl. of Kevin L. Tyrrell ("Tyrrell Decl.") ¶ 13, ECF No. 41; Decl. of Aneet Marwaha ("Marwaha Decl.") ¶¶ 13, 17, 25–26, ECF No. 42; Decl. of Fernando Pineiro ("Pineiro Decl.") ¶ 10, ECF No. 43.

terms), *and id.* ¶¶ 25–26 (Office of Integrity and Quality Oversight search terms); *compare* Pineiro Decl. ¶ 8 ("OPR investigates allegations of misconduct involving employees of ICE and, under certain circumstances, CBP.") *with id.* ¶ 10 (search terms included only "Roving," "Patrol," "CBP," "Border Patrol," "Roving Patrol," "Patrol Stop," "El Centro," and "San Diego").

Additionally, for some of the searches conducted, Defendants' affidavits do not include *any* information about the search terms used.  Burroughs Decl. ¶ 14 (describing San Diego and El Centro Sector non-ENFORCE database searches of "shared drive" but not specifying terms used); *id.* ¶ 20 (describing "manual retrieval based on NGO Liaison's knowledge" but not specifying terms used); *id.* ¶ 25 (describing search of "case tracking system" but not specifying terms used). Without this information, it is impossible to evaluate the reasonableness of the searches conducted by these components.  *NDLON*, 877 F. Supp. 2d at 110 ("Surely, the agencies have failed to establish the adequacy of the searches for which they have specified no search terms.").

Defendants unreasonably relied on narrow and formalistic search terms and omitted obvious additional search terms likely to generate responsive records. Agencies must construe FOIA requests liberally, and cannot discharge their legal obligations via self-serving limitations.  *Law. Comm. for Civ. Rts. of S.F. Bay Area v. Treasury*, 534 F. Supp. 2d 1126, 1130 (N.D. Cal. 2008) [hereinafter *LCCR*].

*Second*, Defendants' own affidavits indicate that at least some obvious component offices with "files likely to contain responsive records" were not searched at all.  *Nation Mag.*, 71 F.3d at 890.  Defendants did not search at least seven entities responsible for defining policy, developing training materials, investigating complaints, or pursuing disciplinary measures: the DHS Privacy Office; CBP Office of the Commissioner ("OC")'s Office of Policy and Planning; CBP Office of Training; the CBP Office of Human Resources Management

("HRM") Discipline Review Board; DHS OIG Office of Investigations ("INV"); Internal Affairs' Investigative Operations Division; and Internal Affairs' Joint Intake Center.  Tomsheck Decl. ¶¶ 7–16.  Given the function of each of these entities and the specific items Plaintiffs requested, Defendants' failure to search these agencies was improper.  *Id.* (describing agencies).[12]  *See Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) ("It is well-settled that if an agency has reason to know that certain places *may* contain responsive documents, it is obligated under FOIA to search [them] barring an undue burden." (citations omitted; emphasis added)).

Defendants' affidavits leave unanswered the question why additional entities were not also searched.  For example, there is no explanation why, within HRM, only the Division of Labor and Employee Relations ("LER") was searched.  Burroughs Decl. ¶ 25.  Significantly, CBP does not aver that all files likely to contain responsive materials within HRM were searched.  *Nation Mag.*, 71 F.3d at 890.  This is deficient.  *See NDLON*, 877 F. Supp. 2d at 96 ("[A]gencies must . . . describe at least generally the structure of the agency's file system . . . [and] establish that they searched all custodians who were reasonably likely to possess responsive documents." (citation omitted)).

*Third*, Defendants' affidavits leave uncertain the question whether various agencies improperly restricted their searches to limited databases.  For example, ICE OPR searched the Joint Integrity Case Management System ("JICMS").  Pineiro Decl. ¶ 10; Tomsheck Decl. ¶¶ 19–21.  It is not clear, however, that CBP's Office of Internal Affairs ("IA") itself searched this system.  Burroughs Decl. ¶ 24 (explaining that IA "conducted a search of cases in the tracking system" without specifying the name of that system or averring that only one tracking system

---

[12] Defendants note that OIG IQO, which was searched, "supplement[s] the work of OIG's Office of Investigations," which was not.  Marwaha Decl. ¶ 19.

exists).  More information is necessary to evaluate IA's search.  ICE OPR's search of JICMS is not sufficient; as JICMS is an IA system of record, IA staff have greater facility with it.  Tomsheck Decl. ¶¶ 19–22.  Because an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested," *Oglesby v. Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), the agency "at a minimum ha[s] to aver that it has searched all files likely to contain relevant documents. . . . Where the government has not made any such attestation, courts have typically found that an issue of material fact exists as to the adequacy of the search." *AIC v. DHS*, 950 F. Supp. 2d 221, 230 (D.D.C. 2013) (collecting cases).  *See also LCCR*, 534 F. Supp. 2d at 1130 ("While there is no requirement that an agency search every record system, or that a search be perfect, the search must be conducted in good faith using methods that are likely to produce the information requested if it exists." (citations omitted)).

Finally, the record shows that materials have been overlooked.  For example, despite the fact that Plaintiffs' request covered two of CBP's twenty sectors and more than four years' worth of records, DHS OIG—the entity charged with "detect[ing] and deter[ring] waste, fraud, and abuse" within the Department— located just *one* responsive document (a single three-page complaint).  Marwaha Decl. ¶¶ 1, 27.  This surprised OIG's *own FOIA Unit*.  *Id.* ¶ 26 ("Based on the small number of responsive records, the FOIA Unit asked IQO to rerun the search . . . .").  Likewise, CRCL's Compliance Branch—which "investigates complaints from the public alleging violations of civil rights and civil liberties in DHS activities"— produced just sixteen pages of records.  Tyrrell Decl. ¶¶ 10, 16.  As explained, CRCL, OIG, and ICE OPR all impermissibly limited their search terms, virtually ensuring that the public's complaints of civil and other rights violations would not be located.  Where, as here, "the record itself reveals positive indications of overlooked materials," an agency's search is legally inadequate and it is not entitled

to summary judgment.  *Valencia-Lucena*, 180 F.3d at 327 (quotation marks and citation omitted); *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("Evidence that relevant records have not been released may shed light on whether the agency's search was indeed inadequate.").

Defendants have thus failed to complete searches "reasonably calculated to uncover all relevant documents."  *L.A. Times*, 442 F. Supp. 2d at 893 (citation omitted).  The Court should order Defendants to conduct additional searches that rectify the deficiencies outlined above.  *NDLON*, 877 F. Supp. 2d at 111.

### D.   Defendants Are Unlawfully Withholding the CBP Enforcement Law Course.

Defendants have withheld, *in its entirety*, a 1133-page document called the CBP Enforcement Law Course ("ELC").  Ebadolahi Decl. ¶ 10 & Ex. D.  Although Plaintiffs repeatedly have asked for additional information about this document, including specifically requesting a Table of Contents and/or index, Defendants have refused to provide any further details.  Ebadolahi Decl. ¶¶ 11–12 & Exs. E–F.[13] Instead, Defendants assert that the entire ELC is exempt from disclosure pursuant to FOIA Exemptions 5 and 7(E).

To justify a withholding, an "agency must offer oral testimony or affidavits that are detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption."  *Maricopa Audubon*, 108 F.3d at 1092 (citation omitted).  In assessing the government's claims, courts "may examine the contents of [withheld] agency records *in camera*."  5 U.S.C. § 552(a)(4)(B).  Because Defendants' evidence is insufficient to establish that either Exemption 5 or Exemption 7(E) applies to the ELC—much less that either exemption can justify withholding this record in its entirety—Plaintiffs are entitled to summary judgment and this Court should order the document released.  Alternatively, this Court should

---

[13] In fact, Defendants did not even indicate the *volume* of this withheld material to Plaintiffs initially.  Ebadolahi Decl. ¶ 10.

conduct an *in camera* review of the ELC and an independent assessment of Defendants' claimed exemptions.

### 1. FOIA Exemption 5 Does Not Apply to the ELC.

Exemption 5 "withholds from a member of the public documents which a private party could not discover in litigation with the agency." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975) [hereinafter *Sears*] (citation omitted). The Supreme Court has "construe[d] Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context." *Id.* at 149. Here, Defendants invoke the attorney-client privilege and the work product doctrine. Defs.' MSJ at 20–22. Defendants fail to establish that either privilege or work product justifies withholding the ELC, especially since their own submissions indicate that some or all of the ELC is "working law" that must be disclosed.

### a. Defendants' Submissions Indicate the ELC is "Working Law" That Must Be Disclosed.

The working law doctrine prevents agencies from relying on Exemption 5 to withhold the rules and interpretations that constitute their formal or informal policy. *See Sears*, 421 U.S. at 152–53. Thus, "Exemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy." *Id.* at 153 (citation omitted). "Working law" includes an agency's opinion about "what the law is" and "what is not the law and why it is not the law." *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997).[14]

This doctrine is grounded in the text of FOIA itself, which expressly mandates government agencies to produce "final opinions"; "those statements of

---

[14] Although courts often discuss the "working law" doctrine in the context of the deliberative process privilege, *Brennan Ctr. for Just. v. DOJ*, 697 F.3d 184, 195–96, 199–202 (2d Cir. 2012); *Assembly of St. of Cal. v. Commerce*, 968 F.2d 916, 920 (9th Cir. 1992); *ACLU of N. Cal. v. DOJ*, 70 F. Supp. 3d 1018, 1027 (N.D. Cal. 2014), the "working law" and "incorporation/adoption" exceptions to Exemption 5 apply equally to attorney-client privilege and work product. *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 360–61 (2d. Cir. 2005) (discussing cases).

policy and interpretation which have been adopted by the agency and are not published in the Federal Register"; and "administrative staff manuals and instructions to staff that affect a member of the public."  5 U.S.C. § 552(a)(2)(A)– (C).  The working law doctrine ensures that an agency does not thwart FOIA's requirements by "develop[ing] a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege . . . ."  *Coastal States Gas Corp. v. Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980); *Brennan Ctr. for Just. v. DOJ*, 697 F.3d 184, 200–202 (2d Cir. 2012) ("the 'working law' analysis is animated by the affirmative provisions of FOIA," which require agencies to disclose their operative rules to the public); *Sears*, 421 U.S. at 153 (given "strong congressional aversion to secret (agency) law" FOIA "represents an affirmative congressional purpose to require disclosure of documents which have the force and effect of law" (quotation marks and citations omitted)).

Based on Defendants' own descriptions of the ELC, it is apparent that some, if not all, of this document constitutes CBP's "working law":

> [The ELC] is designed *to address the major areas of law relevant* to CBP's law enforcement mission.  It *serves as a framework for the legal training* provided by CBP's Office of Chief Counsel attorney-instructors and as *a legal resource* for CBP enforcement personnel.  It advises on *the legal authority* of CBP's law enforcement personnel and issues they would confront in investigations and prosecutions, *encouraging certain practices and discouraging others* . . . .

Burroughs Decl. ¶ 38 (emphases added); *see also id.* ¶ 49 (ELC includes "the agency's views of legal constraints on [its] authority.").  These descriptions emphatically clarify that the ELC (1) represents CBP's opinion about "what the law is," *Tax Analysts*, 117 F.3d at 617; 5 U.S.C. § 552(a)(2)(A); (2) includes "statements of policy and interpretations which have been adopted by the agency

13

and are not published in the Federal Register," 5 U.S.C. § 552(a)(2)(B); and

(3) incorporates "instructions to staff that affect" members of the public, 5 U.S.C.

§ 552(a)(2)(C).  Such materials must be disclosed.  *Sears*, 421 U.S. at 152–53.

### b. Defendants Have Not Established that Either the Work Product Doctrine or the Attorney-Client Privilege Applies to the ELC.[15]

In any event, Defendants have failed to establish that Exemption 5 applies to

any part of the ELC that is not working law.

As a preliminary matter, Defendants' *Vaughn* index is "patently inadequate"

as to the ELC.  *Coastal States*, 617 F.2d at 861.  "To justify withholding, the

government must provide tailored reasons in response to a FOIA request.  It may

not respond with boilerplate or conclusory statements." *Shannahan v. IRS*, 672

F.3d 1142, 1148 (9th Cir. 2012) (citation omitted).  Moreover, "[w]here documents

are withheld altogether, the requester needs a *Vaughn* index of considerable

specificity to know what the agency possesses but refuses to produce." *Fiduccia v.

DOJ*, 185 F.3d 1035, 1043 (9th Cir. 1999).  Notwithstanding this settled law, CBP

improperly withholds an 1100-plus-page document based on a single conclusory

sentence.  Vaughn II, No. 42 ("The (b)(5) exemption was taken because this

document, prepared by CBP's Office of Chief Counsel, constitutes attorney work

product and attorney-client communication regarding various areas of law relevant

to the agency's law enforcement mission.").  Similarly, Defendants' declaration in

support of this Exemption 5 claim is just one paragraph replete with vague

overgeneralizations.  Burroughs Decl. ¶ 38.  This is legally inadequate. *Weiner v.

FBI*, 943 F.2d 972, 979 (9th Cir. 1991) ("Specificity is the defining requirement of

the *Vaughn* index[;]" without it, "the adversarial process is unnecessarily

compromised" (quotation marks and citation omitted)); *Mead*, 566 F.2d at 251

---

[15] Defendants likewise have failed to segregate and release non-exempt portions of the ELC. *See infra*, Section II.F.

("broad, sweeping, generalized claims under several exemptions covering voluminous information running many hundreds of pages" legally insufficient).[16]

In addition to these procedural deficiencies, Defendants have failed to establish substantively that either the attorney-client privilege or the work product doctrine apply to the ELC.

### i.    The ELC is Not Attorney-Client Privileged.

The attorney-client privilege "is narrowly construed" and "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Coastal States*, 617 F.2d at 862–63 (quoting *Fisher v. U.S.*, 425 U.S. 391, 403 (1976)).  This privilege cannot be properly applied to the ELC.

*First*, Defendants have "failed to demonstrate a fundamental prerequisite to assertion of the privilege: confidentiality *both* at the time of the communication *and maintained since*." *Coastal States*, 617 F.2d at 863 (emphases added); *see also Mead*, 566 F.2d at 253–54.  Defendants assert that the ELC "is published for the exclusive use of CBP law enforcement personnel in the performance of their official duties, and circulation of the document outside the agency is restricted." Burroughs Decl. ¶ 38.  But Defendants never establish that CBP has maintained the confidentiality of the material in the ELC.  For this reason, alone, the agency cannot rely on the attorney-client privilege to withhold the ELC.  *Coastal States*, 617 F.2d at 863 ("The purpose of the privilege is limited to protection of confidential facts. If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential."); *cf.*

---

[16] Although "the provision of adequate justification for withholding could be a substantial burden on an agency," *Coastal States*, 617 F.2d at 861, such "burdens may be avoided at the option of the agency . . . by immediate disclosure." *Mead*, 566 F.2d at 261.  *See also NDLON*, 877 F. Supp. 2d at 93 ("Transparency is indeed expensive, but it pales in comparison to the cost to a democracy of operating behind a veil of secrecy.").

1
2

*Upjohn v. U.S.*, 449 U.S. 383, 395 (1981) (finding communications marked "highly confidential" when made, and "kept confidential" since, privileged).

3
4
5
6
7
8
9
10
11
12
13
14
15
16

  *Second*, even if Defendants had established confidentiality, nothing in the record establishes that part or all of the ELC was written to provide CBP with "informed legal advice." *Coastal States*, 617 F.2d at 862; *Nat'l Immigr. Project v. DHS*, 842 F. Supp. 2d 720, 728 (S.D.N.Y. 2012) [hereinafter *NIP*].  Defendants explain that "CBP's Office of Chief Counsel is responsible for the researching, writing, and publishing of this document."  Burroughs Decl. ¶ 38.  But it is bedrock FOIA law that authorship by an individual holding a law degree does not automatically exempt material from FOIA disclosure.  *Coastal States*, 617 F.3d at 865.  Furthermore, even when an agency's affidavit states that a document contains legal advice, courts have required more.  *Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d 65, 80 (D.D.C. 2008) (DOJ declarations "indicate that the documents at issue contain legal advice," but this "does not necessarily mean that the attorney-client privilege applies . . . [.]  [T]he declarations . . . are too vague to enable this court to determine whether the attorney-client privilege applies.").

17
18
19
20
21
22
23
24
25
26

  *Finally*, Defendants baldly assert that the ELC "encourag[es] certain practices and discourag[es] others with a view towards claims and defenses that would be employed in litigation," and "advises of potential challenges, defenses, and outcomes."  Burroughs Decl. ¶ 38.  Yet Defendants' submissions also indicate that the ELC consists of "neutral, objective analyses of agency regulations" and the kind of "question and answer guidelines which might be found in an agency manual" and which are *not* protected by the attorney-client privilege.  *Coastal States*, 617 F.2d at 863; *NIP*, 842 F. Supp. 2d at 729 n.10 ("FOIA prohibits agencies from treating their policies as private information.  Thus, [the] attorney-client privilege simply does not apply to statements of policy. . . .").

27
28

16

## ii.    The ELC is Not Work Product.

The work product doctrine exists to provide "a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States*, 617 F.2d at 864; *see generally Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). This narrow doctrine is limited to documents "initially prepared in contemplation of litigation, or in the course of preparing for trial." *Coastal States*, 617 F.2d at 865. These limits are crucial; if "an agency were entitled to withhold any document prepared by any person in the Government with a law degree simply because litigation *might someday* occur, the policies of the FOIA would be largely defeated." *Id.* at 865 (emphasis added).

Defendants' own submissions undermine their claim that the ELC is work product. Defendants state that the ELC "address[es] the major areas of law relevant to CBP's law enforcement mission"; "serves as a framework for [ ] legal training provided" to personnel; and "advises on legal authority." Burroughs Decl. ¶ 38. None of these qualities triggers work-product protection. Where, as here, a document functions "like an agency manual, fleshing out the meaning of the [laws the agency is] authorized to enforce," the government must establish that the document reflects attorney work-product addressing a "specific claim." *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987); *see also Coastal States*, 617 F.2d at 866 ("At the very least, the agency must establish in its affidavits or indexes the fact that a specific claim had arisen, was disputed . . . and was being discussed in the memorandum . . . ."). Yet, rather than any *actual* "specific claim," Defendants' submissions mention only the *possibility* of many *hypothetical* claims. Burroughs Decl. ¶ 38 (ELC "was prepared in anticipation of foreseeable litigation" simply "because individuals in immigration removal proceedings and defendants in criminal proceedings commonly litigate the

propriety of detentions, searches, and apprehensions, and claims sometimes arise that CBP enforcement personnel have allegedly violated civil rights"). This sweeping conception of the scope of work product is entirely at odds with settled precedent and the requirement to construe FOIA exemptions narrowly. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) ("[T]he work product exemption, read over-broadly, could preclude almost all disclosure from an agency with substantial responsibilities for law enforcement.").

It is true that courts sometimes uphold work-product assertions where an agency has failed to establish "that a specific claim had arisen, was disputed . . . and was being discussed" in the withheld document. *Coastal States*, 617 F.2d at 866. Even in such cases, however, (a) the function of the withheld documents in "foreseeable litigation" is clear to the court and (b) the documents specifically advise the agency "of the types of legal challenges likely to be mounted *against a proposed program*, potential defenses available to the agency, and the likely outcome." *Delaney*, 826 F.2d at 127 (emphasis added); *see also, e.g.*, *In re Sealed Case*, 146 F.3d 881, 885–86 (D.C. Cir. 1998) (material that "rendered legal advice in order to protect the client from future litigation *about a particular transaction*" was work product, where "litigation over *this issue* was probable" (emphases added)); *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (documents that contain "tips" and "advice" for defending and litigating cases under 5 U.S.C. § 504 exempt, citing *Delaney*), *abrogated on other grounds by Milner v. Navy*, 131 S. Ct. 1259 (2011). As neither prerequisite is satisfied on the record before the Court, this body of precedent is distinguishable. There is a crucial distinction between documents that elaborate upon a government agency's overarching legal obligations and those that apply legal rules to the facts of a specific case. The latter may be work product. The former is not. Accordingly, the ELC is not covered by Exemption 5.

### 2.  FOIA Exemption 7(E) Does Not Apply to the ELC.[17]

Exemption 7(E) protects "records or information compiled for law enforcement purposes," but only to the extent that production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  As to the ELC, CBP apparently invokes only the "techniques and procedures" portion of Exemption 7(E).  Defs.' MSJ at 16–20; Burroughs Decl. ¶¶ 47–49.  The ELC, however, is not exempt under 7(E).

*First*, Defendants once again have failed to satisfy an exemption's threshold requirements.  To rely on Exemption 7(E), the government must first establish that the *specific* record withheld was "compiled for law enforcement purposes." *Rosenfeld v. DOJ*, 57 F.3d 803, 808 (9th Cir. 1995).  Where, as here, the releasing agency "has a clear law enforcement mandate," that agency "need only establish a 'rational nexus' between enforcement of a federal law and the document for which" Exemption 7 is claimed.  *Id.* (quotation marks and citation omitted).  CBP has not satisfied this test—it has established no "rational nexus" between the ELC and "enforcement of a federal law."  *Id.  See* Burroughs Decl. ¶¶ 47–49; Vaughn II No. 42.  Rather, Defendants assert that *all* CBP documents satisfy a "law enforcement purpose" "inasmuch as they pertain to CBP's attempts to control the borders and identify potential criminal activity or illegal immigration."  Defs.' MSJ at 16 (citing *Bishop v. DHS*, 45 F. Supp. 3d 380, 387 (S.D.N.Y. 2014)).[18]  This is not a proper reading of the phrase "compiled for," Exemption 7(E) more broadly, or of CBP's

---

[17]  Again, Defendants have failed to segregate and release non-exempt portions of the ELC. *See infra*, Section II.F.

[18]  *Bishop* is readily distinguishable.  There, the documents at issue came from two law enforcement databases that stored information pertaining to specific individuals and assisted CBP in determining admissibility of persons seeking entry into the United States.  45 F. Supp. 3d at 384–85.

obligations under FOIA.  *See, e.g.*, *ACLU v. FBI*, No. C 12-03728 SI, 2013 WL 3346845, at *6 (N.D. Cal. July 1, 2013) (FBI's declaration "insufficient to establish a nexus" since it "refers only vaguely to 'crimes' and 'federal laws', but does not cite the specific laws that it was enforcing" (citation omitted)).

 *Second*, even if the government had established that the ELC was "compiled for law enforcement purposes," it has not established that any specific part—much less all—of this document includes "techniques and procedures for law enforcement investigations or prosecutions."  5 U.S.C. § 552(b)(7)(E).  In fact, the record again suggests otherwise: CBP's generalized descriptions indicate the ELC describes legal doctrines applicable to the agency's work.  Burroughs Decl. ¶ 38 (ELC "address[es] the major areas of law relevant to" CBP and "serve[s] as a framework for [ ] legal training" and "a legal resource for CBP enforcement personnel"); *id.* ¶ 49 (ELC disclosure "would make public how enforcement personnel are trained, across a multitude of scenarios, as to the agency's view of legal constraints on [agents'] authority . . . .").[19]  Descriptions of operative legal standards are not, however, law enforcement "techniques and procedures."[20]

 *Finally*, even if the record confirmed that the ELC included "techniques and procedures for law enforcement investigations or prosecutions," 5 U.S.C. § 552(b)(7)(E), Exemption 7(E) "only exempts investigative techniques not generally known to the public."  *Rosenfeld*, 57 F.3d at 815.  None of Defendants' submissions establish that the ELC includes any discussion of techniques "not generally known."  *Cf.* Burroughs Decl. ¶ 49 ("disclosure would make public . . .

---

[19] Significantly, law enforcement agency training manuals are not categorically exempt from disclosure under FOIA; if Congress had intended them to be, it would have included express language to this effect within Exemption 7.

[20] Consider a description of the Fourth Amendment and legal standards derived therefrom regarding searches and seizures.  Such standards are public statements of operative law, not "techniques."  In any event, Exemption 7(E) may only be invoked to justify withholdings of "techniques *not* generally known to the public."  *Rosenfeld v. DOJ*, 57 F.3d 803, 815 (9th Cir. 1995) (emphasis added).

what techniques will or will not support prosecutions"); *id.* ¶ 51 ("disclosure of the information withheld . . . would advise potential violators of CBP law enforcement guidelines, techniques and procedures").  Moreover, Exemption 7(E) does not apply to information about law enforcement techniques that are "illegal or of questionable legality." *Wilkinson v. FBI*, 633 F. Supp. 336, 349 (C.D. Cal. 1986).  The scant record here is inadequate for an informed assessment of whether these Exemption 7(E) exceptions apply.

For all of these reasons, Defendants cannot rely on Exemption 7(E) to withhold the ELC.  Because Defendants have not satisfied their burden under the FOIA, the ELC must be released to the public.  Alternatively, Defendants should be ordered to produce more detailed justifications for their 7(E) withholdings and this Court should then conduct an *in camera* review of the ELC and an independent assessment of Defendants' claimed exemptions.  *Weiner*, 943 F.2d at 979 ("*In camera* review does not permit effective advocacy" and is thus "appropriate only *after* the government has submitted as detailed public affidavits and testimony as possible" (quotation marks and citations omitted; emphasis added)); *id.* ("*In camera* review may supplement an adequate Vaughn index, but may not replace it." (citation omitted)); *Church of Scientology v. Army*, 611 F.2d 738, 743 (9th Cir. 1979) ("*In camera* inspection may supplement an otherwise sketchy set of affidavits.  By first-hand inspection, the court may determine whether the weakness of the affidavits is a result of poor draftsmanship or a flimsy exemption claim." (citations omitted)), *overruled on other grounds by Animal Legal Def. Fund v. FDA*, ___ F.3d ____, 2016 WL 4578362 (9th Cir. 2016) (en banc).

### E.    CBP Has Failed to Establish that Other Responsive Records Are Exempt Under 7(E).

In addition to the ELC, CBP has withheld a number of additional documents, some in their entirety, pursuant to Exemption 7(E).  Defendants' *Vaughn* index and declarations are insufficient to establish Exemption 7(E) applies to these materials.

As Defendants have not shouldered their burden under FOIA, the withheld documents should be released.  Alternatively, at a minimum, Defendants should be ordered to supplement the record and this Court should undertake an independent *in camera* assessment of these documents.

### 1. The Record Is Inadequate to Evaluate Whether Exemption 7(E) Applies to CBP Policy Memoranda.

Pursuant to Exemption 7(E), CBP has withheld six memoranda in full and one page of an "internal report of inquiry" (together, "CBP Policy Memos").  *See* Defs.' MSJ at 19; Ebadolahi Decl. ¶ 13 & Ex. G.  In contrast to the record on the ELC, CBP has submitted more detailed information about the contents of these documents and whether they were "compiled for law enforcement purposes."[21]  5 U.S.C. § 552(b)(7); *see* Vaughn II Nos. 32, 33, 40, 41, 43, 86, & 100.

Even assuming, however, that the threshold Exemption 7 inquiry has been established for these memos, CBP's submissions are inadequate to allow Plaintiffs to evaluate the merits of these Exemption 7(E) withholdings.

*First*, it is unclear whether the memos contain only law enforcement "techniques and procedures" or if instead they contain "techniques and procedures" and also "guidelines."  As the Ninth Circuit recently clarified, for law enforcement "guidelines," the government must show that disclosure "could reasonably be expected to risk circumvention of the law."  *Hamdan v. DOJ*, 797 F.3d 759, 778 (9th Cir. 2015) (citation omitted).  CBP has not done so.

In fact, at least three of these seven policy memos are obsolete.  Vaughn II No. 43 (enforcement actions at or near certain community locations); No. 86 (containing "a discussion of previous policy on the use of non-deadly force"); and

---

[21] It is telling to compare the utter lack of detail provided in CBP's *Vaughn* index as to the ELC, *see* Vaughn II No. 42 (one sentence on Exemption 7(E) for a document exceeding 1100 pages), with the detail provided as to the other CBP Policy Memos (each of which is just a few pages).  The latter may be legally inadequate; there can be no question that the former is deficient.

No. 100 (enforcement standards for use of non-deadly force).  Public versions of these policies exist.  Ebadolahi Decl. ¶¶ 14–15 & Exs. H–I.  To the extent these records contain law enforcement "techniques and procedures," therefore, those techniques are now public and this information cannot be withheld pursuant to Exemption 7(E).  *Rosenfeld*, 57 F.3d at 815.  To the extent these records contain law enforcement "guidelines" and thus require a showing of circumvention under *Hamdan*, Defendants' subsequent publication of the now-operative versions of these guidelines undermines any circumvention claim.

CBP entirely fails to address circumvention as to the first memo.  Vaughn II No. 43.  As to the remaining two, which include outdated statements on use of force, CBP contends that publication "of previous policy, in light of the public availability of present policy on the use of force, could reasonably be expected to risk circumvention of the law based on the possibility of comparing previous and current parameters to identify strategies for engaging in illegal conduct without incurring the use of force."  Vaughn II Nos. 86 & 100.  This position is absurd: only the current (new) policy is operative, and it is already public.  Release of now-inoperative versions of these policies cannot logically be claimed to "create a risk of circumvention."  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).[22]

*Finally*, as to all seven of these documents, the record is unclear on the question of segregability.  As discussed below, however, this Court must make an independent assessment of segregability; to do so, it should review these memos, unredacted, *in camera*.

### 2.  The Record Is Inadequate As To Other CBP Exemption 7(E) Redactions.

Finally, CBP invokes Exemption 7(E) to redact certain types of information;

---

[22] Under the "public-domain doctrine," materials normally exempt from disclosure under FOIA "lose their protective cloak once disclosed and preserved in a permanent public record."  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (collecting cases).

the legality of these withholdings is disputed.

### a.  Civilian Complaints Against CBP.

CBP relies on Exemption 7(E) to withhold part or all of twelve documents that contain various allegations of Border Patrol misconduct.  Ebadolahi Decl. ¶ 16 & Ex. J; *see also* Vaughn II Nos. 24, 26, 28, 35, 69, 70, 82, 89, 93, 94, 139, & 140.

Again, it is unclear whether these documents were "compiled for law enforcement purposes."  *Rosenfeld*, 57 F.3d at 808.  To establish Exemption 7's threshold requirement, the agency must provide the court with sufficient detail as to the purpose of the agency actions that led to the creation of the documents.  *See, e.g.*, *Patterson v. IRS*, 56 F.3d 832, 837–38 (7th Cir. 1995).  Courts have identified two types of "investigatory files" compiled by government agencies: files in connection with oversight of employees' performance of duties, and files in connection with investigations focusing directly on employees' "specific alleged illegal acts which could result in civil or criminal sanctions."  *Jefferson v. DOJ OPR*, 284 F.3d 172, 177 (D.C. Cir. 2002) (citation omitted).  The former is not 7(E) exempt; the latter may be.  *Id.*; *see also, e.g.*, *Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1194–95 (N.D. Cal. 2006).  CBP's submissions do not establish the class of "investigatory files" to which these twelve documents belong.  In fact, CBP's declaration is entirely silent on this question.  Burroughs Decl. ¶¶ 47–51.

Moreover, even if CBP had established that these documents were "compiled for law enforcement purposes," the agency's submissions are inadequate to assess whether the withheld material "would disclose techniques or procedures" or "guidelines" for law enforcement investigations or prosecutions.  One entirely redacted record is so minimally described in CBP's *Vaughn* that it is impossible to evaluate this question at all.  Vaughn II No. 94, Ebadolahi Decl. Ex. J-10.  Likewise, it is impossible to evaluate the propriety of the 7(E) redactions in another document given the minimal information CBP has provided about it.  Vaughn II

No. 93, Ebadolahi Decl. Ex. J-9 at 242.  For the remaining records, there are indications that some of the 7(E) redactions may not, in fact, pertain to "techniques," "procedures," or "guidelines."  *See, e.g.*, Vaughn II No. 24, Ebadolahi Decl. Ex. J-1 at 201 ("The minivan was also riding low and in our training experience, [REDACTED]"); Vaughn II No. 140, Ebadolahi Decl. Ex. J-12 at 279–80 ("Most travelers understand the purpose of the checkpoints and our border security mission and treat agents with respect and dignity.  [REDACTED]").

More information is needed to allow Plaintiffs and this Court to assess the propriety of these Exemption 7(E) withholdings.

### b.  Name Designated By Border Patrol to Areas of Operations.

Defendants have withheld some of Border Patrol's names for areas of operation—yet Defendants do not claim, much less establish, that the release of these names would disclose any law enforcement technique or procedure, or disclose guidelines that would risk circumvention of the law.[23]  Defendants have not plausibly explained how disclosure of an area name could be used by individuals to avoid detection.  *See* Burroughs Decl. ¶ 49; Vaughn II No. 12.

### c.  Guidance Regarding Prosecutions, Programs, and Vehicle Seizures.

Invoking Exemption 7(E), Defendants have redacted agency guidelines regarding prosecutions, programs, and seizures.  *See, e.g.*, Vaughn I at 17–18 (listing redacted pages' BATES numbers).  Again: Exemption 7(E) protects guidelines only "when their disclosure could reasonably be expected to risk the circumvention of law."  Burroughs Dec. ¶ 51; *see also Hamdan*, 797 F.3d at 778. Yet Defendants offer only a vague and wholly conclusory statement regarding risk of circumvention for these documents.  Burroughs Dec. ¶ 51 ("Disclosure of the

---

[23] In fact, Defendants have inconsistently redacted this information, sometimes releasing these "area of operations" names.  *See* Ebadolahi Decl. ¶¶ 17–18 & Ex. K-1 (names redacted) & Ex. K-2 (names unredacted).

information withheld pursuant to this Exemption would advise potential violators of CBP law enforcement guidelines . . . thereby enabling them to circumvent the law, avoid detection, and evade apprehension."). This is inadequate. *See ACLU of N. Cal. v. DOJ*, 70 F. Supp. 3d 1018, 1039 (N.D. Cal. 2014).

Moreover, plain logic defies the blanket application of Defendants' claim to the withheld guidelines. For example, Defendants have withheld information that would purportedly disclose guidelines for seizing property and logging information related to seizures. *See, e.g.*, Vaughn I at 17 (describing guidance on "conducting vehicle and firearm seizures, and who to involve in reporting information and making decisions"); Ebadolahi Decl. Ex. J-4 at 213 (Vaughn II No. 35). Such guidelines are designed to ensure accountability and appropriate behavior by CBP agents, *separate from or subsequent to* the detection and apprehension of law violators. Defendants do not and cannot explain how disclosing such guidelines would risk circumvention of the law. Accordingly, the Court should order the withheld guidelines disclosed.

**F.     Defendants Have Not Disclosed Reasonably Segregable Material.**

Even if the ELC or other CBP memoranda are partially exempt from disclosure, Defendants have violated FOIA by failing to release reasonably segregable material. 5 U.S.C. § 552(b). "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead*, 566 F.2d at 260.

Notwithstanding Defendants' cursory assertions to the contrary, *see* Burroughs Decl. ¶ 53, it seems highly unlikely that *none* of the 1100-plus-page ELC is segregable. As to the other CBP policy memos, Defendants' submissions are wholly inadequate to allow Plaintiffs to assess segregability. *See, e.g.*, *Mead*, 566 F.2d at 260 ("We recognize that the question of segregability is completely dependent on the actual content of the documents themselves and that the

requesting party is helpless to counter agency claims that there is no non-exempt and reasonably segregable material within a withheld document."). "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide *the reasons* behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Id.* at 261 (emphasis added). "In addition to a statement of its reasons, an agency should also describe *what proportion* of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id.* (emphasis added). "Armed with such a description, both litigants and judges will be better positioned to test the validity of the agency's claim that the non-exempt material is not segregable." *Id.*

Defendants have provided none of this specific information for the ELC or the other withheld CBP memoranda; for this reason alone, their motion for summary judgment should be denied. Defendants should produce a more detailed *Vaughn* index and declarations, so that both Plaintiffs and this Court can evaluate the Defendants' segregability claims. *See, e.g.*, *Schiller*, 964 F.2d at 1209 (remanding for further proceedings on segregability where agency *Vaughn* did "not correlate the claimed exemptions to particular passages" in withheld memos, and agency affidavit "refer[red] to entire documents and not any passages within them"); *L.A. Times*, 442 F. Supp. 2d at 892 ("[I]t is reversible error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or lack thereof." (quotation marks and citation omitted)).

In addition, or in the alternative, this Court should order Defendants to submit the ELC and the other entirely-redacted CBP documents for *in camera* review, so that it can make an independent assessment of the record. *See Kowack v. Forest Serv.*, 766 F.3d 1130, 1137 (9th Cir. 2014) (remanding "for the district court to order the government to produce a more detailed Vaughn index . . . and, if that's

not sufficient, to conduct an *in camera* review" of the withheld records, and concluding that "[i]f the government can't meet its burden, the district court must order the documents disclosed").

### G. Defendants Cannot Withhold Names of CBP Officials Pursuant to FOIA Exemptions 6 and 7(C).

FOIA Exemptions 6 and 7(C) allow agencies to withhold limited categories of information in cases where the personal privacy interests in nondisclosure outweigh the public interest in disclosure. FOIA's presumption in favor of disclosure "is at its zenith under Exemption 6." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 37 (D.C. Cir. 2002). An agency may withhold "personnel and medical and similar files" pursuant to Exemption 6 only if their disclosure would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The scope of Exemption 7(C) is both broader and more narrow than Exemption 6: it applies where disclosure can "reasonably be expected to constitute an unwarranted invasion of personal privacy," but only to "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C).

Neither exemption authorizes the withholding of private personal information in all instances. Rather, the implicated privacy interests must be balanced against the public's interest in "open[ing] agency action to the light of public scrutiny." *Jurewicz v. Agriculture*, 891 F. Supp. 2d 147, 160 (D.D.C. 2012) (quotations and citations omitted), *aff'd*, 741 F.3d 1326 (D.C. Cir. 2014). If the public interest in disclosure outweighs the privacy interests, the information is not properly withheld pursuant to Exemption 6 or 7(C). FOIA's "strong presumption in favor of disclosure places the burden on the agency" to establish that the balance of interests justifies nondisclosure. *State v. Ray*, 502 U.S. 164, 173 (1991).

Defendants invoke Exemptions 6 and 7(C) to justify redacting the names of CBP officials from a wide range of documents responsive to Plaintiffs' request. They have withheld the names of high-level and supervisory officials as well as

low-level agents; though Defendants recently released the names of certain senior officials to Plaintiffs, they refuse to disclose the names of other officials who hold the same or similar titles.

For several reasons, Defendants fail to meet their burden to show that Exemptions 6 or 7(C) apply to the withheld names of public officials. *First*, Defendants cannot demonstrate that all of the redacted names are "personnel, medical, or similar files," as required for Exemption 6 to apply. *Second*, Defendants fail to show that each record was "compiled for law enforcement purposes," as required for Exemption 7(C) to apply. *Third*, Defendants fail to establish that disclosing the names would effect an "unwarranted invasion of privacy." *Finally*, Defendants cannot show that any minimal privacy interest implicated by disclosure of the names by themselves outweighs the public's interest in information necessary to identify and hold the government accountable for abuses in border communities.[24]

### 1. Defendants Fail to Satisfy Exemption 6's Threshold Requirement.

For Exemption 6 to apply, the information at issue must be contained in a personnel, medical, or similar file. 5 U.S.C. § 552(b)(6). For this reason alone, the Court may conclude that Exemption 6 does not apply to most of Defendants' redactions. *See, e.g.*, *Families for Freedom v. CBP*, 837 F. Supp. 2d 287, 300–01 (S.D.N.Y. 2011) (ending analysis after concluding that agency failed to meet threshold requirement).

Defendants have redacted the names of CBP officials from documents that clearly are not personnel, medical, or similar files. The redacted documents do not

---

[24]Plaintiffs seek the CBP officials' names to enable the public to identify patterns of behavior and abuse within the agency. Plaintiffs do not seek other information redacted pursuant to FOIA Exemptions 6 and 7(C), such as phone numbers, email addresses, birth dates, photos, fingerprints, or identification numbers of government employees. Plaintiffs have never sought any personal information about third parties who are not government officials. *See* Ebadolahi Decl. Ex. A.

29

contain medical information about the unnamed CBP officials or information concerning their hiring, firing, salary, or employment benefits. *See, e.g.*, Ebadolahi Decl. ¶ 19 & Ex. L. Defendants have redacted the names of CBP officials who are simply listed as the authors or recipients of correspondence or memoranda, even when those documents contain no other details about them. *Id.* Exemption 6 does not apply to such information. *See Aguirre v. SEC*, 551 F. Supp. 2d 33, 53 (D.D.C. 2008) (information that "merely identifies the names of government officials who authored documents and received documents" does not meet Exemption 6's threshold requirement); *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005); *Gordon v. FBI*, 390 F. Supp. 2d 897, 902 (N.D. Cal. 2004) ("*Gordon I*"); *see also Gordon v. FBI*, 388 F. Supp. 2d 1028, 1040–42 (N.D. Cal. 2005) ("*Gordon II*") (affirming previous decision on inapplicability of Exemption 6 to employee names).

Indeed, courts have rejected the application of Exemption 6 to justify the redaction of public officials' names from documents nearly identical to those at issue in this matter. *Compare, e.g.*, Ebadolahi Decl. Ex. L at 304, *with Gordon I*, 390 F. Supp. 2d at 902 (names of high-level agency officials listed in email "to" and "from" fields); *Providence J. Co. v. Army*, 781 F. Supp. 878, 883 (D.R.I. 1991) (name listed in investigative report of criminal allegations); *Law. Comm. for Hum. Rts. v. INS*, 721 F. Supp. 552, 569 (S.D.N.Y. 1989) (redacted names of State Department officials and staff).

### 2. Defendants Fail to Satisfy Exemption 7's Threshold Requirement.

As previously discussed, Exemption 7 applies only to information "compiled for law enforcement purposes." *Antonelli v. ATF*, 555 F. Supp. 2d 16, 24 (D.D.C. 2008) (rejecting agency's motion for summary judgment on 7(C) exemptions for failure to meet threshold requirement). The burden is on the agency to establish the nexus between its compilation of the requested information and its law enforcement

activities.  *Coleman v. Lappin*, 535 F. Supp. 2d 96, 98 (D.D.C. 2008) ("Vague and general references" that did not demonstrate how requested records were compiled and did not explain "what enforcement or administrative proceedings may have occurred or may have been authorized" did not establish threshold requirement); *see also United Am. Fin. v. Potter*, 531 F. Supp. 2d 29, 45–46 (D.D.C. 2008; *Antonelli v. ATF*, No. CIV.A. 04-1180 CKK, 2005 WL 3276222, at *7 (D.D.C. Aug. 16, 2005) (where "Defendants have proffered no evidence from which the Court may find for them on the threshold requirement," it "cannot reach the question of whether disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy").

Defendants improperly invoke Exemption 7(C) to withhold public officials' names that plainly were not compiled for law enforcement purposes.  For example, Defendants redacted names from organization charts and other internal documents compiled for administrative purposes.  *Compare, e.g.*, Ebadolahi Decl. Ex. M-1, *with Maydak v. DOJ*, 362 F. Supp. 2d 323 (D.D.C. 2005) (list of staff names and titles of prison employees was not compiled for law enforcement purposes). Defendants also redacted names from documents used for internal monitoring and supervision of employees, without sufficiently tying those documents to a law enforcement purpose.  *Compare, e.g.*, Ebadolahi Decl. Exs. J-4 (Vaughn II No. 35) and P at 336–39, *with Varville v. Rubin*, No. CIV. 3:96CV00629AVC, 1998 WL 681438, at *6 (D. Conn. Aug. 18, 1998) (Exemption 7(C) did not apply to report of inquiry into possible ethical violations and prohibited personnel practices by agency employees); *Greenpeace U.S.A., Inc. v. EPA*, 735 F. Supp. 13, 15 (D.D.C. 1990) (Exemption 7(C) did not apply to records relating to agency employee's compliance with internal regulations).  Although Defendants generally declare they have authority to investigate and enforce violations of criminal and civil law, they do not show that each of the redacted documents was compiled in the exercise of that

authority, and thus fail to establish Exemption 7's threshold requirement. *See Jefferson*, 284 F.3d at 178–79.

### 3. Disclosure of the Withheld Names Would Not Cause An Unwarranted Invasion of Privacy.

Defendants also fail to establish that disclosure of the withheld names would cause an unwarranted invasion of privacy. When an agency does not demonstrate a viable privacy interest, FOIA demands disclosure. *See Assoc. Press v. Defense*, 554 F.3d 274, 285 (2d Cir. 2009).

It is well established that government officials have diminished privacy interests under FOIA, consistent with the statute's purpose to shine light on the activities of government. *Lissner v. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001); *Hardy v. Defense*, No. CV-99-523-TUC-FRZ, 2001 WL 34354945, at *9 (D. Ariz. Aug. 27, 2001); *Sullivan v. Veterans Admin.*, 617 F. Supp. 258, 260–61 (D.D.C. 1985). Disclosure of the names withheld here would only minimally implicate privacy interests. *Compare* Ebadolahi Decl. Ex. J-4 (Vaughn II No. 35), with *Lissner*, 241 F.3d at 1223 (records connecting named law enforcement officers with official misconduct); *compare also* Ebadolahi Decl. Ex. L, with *Castaneda v. U.S.*, 757 F.2d 1010, 1012 (9th Cir.), *opinion amended on denial of reh'g*, 773 F.2d 251 (9th Cir. 1985) (name of USDA investigator); *United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 60 (D.D.C. 2009) (names of OIG investigators and inspectors); *Can. Javelin, Ltd. v. SEC*, 501 F. Supp. 898, 904 (D.D.C. 1980) (names of SEC investigators).

Supervisory and senior-level officials have especially diminished privacy interests. *Hardy*, 2001 WL 34354945 at *9; *see also Sullivan*, 617 F.3d at 261. But courts recognize that even line-level employees may have only limited privacy interests in mere disclosure of their names. *See, e.g.*, *Law. Comm. for Hum. Rts.*, 721 F. Supp. at 569; *Leadership Conf.*, 404 F. Supp. at 257; *Ferguson v. Kelley*, 448 F. Supp. 919, 923 (N.D. Ill. 1977).

Defendants' "bald contention[s]" of possible future harassment of their employees are not enough to establish that disclosure would result in an unwarranted invasion of privacy. *Jud. Watch, Inc. v. Navy*, 25 F. Supp. 3d 131, 143 (D.D.C. 2014); *Potter*, 667 F. Supp. 2d 49, 59–60 (D.D.C. 2009); *Ferguson*, 448 F. Supp. at 923. "[T]hat a threat to privacy is conceivable on some generalized, conjectural level is not sufficient . . . ." *Yonemoto v. Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2011), *overruled on other grounds by Animal Legal Def. Fund v. FDA*, ___ F.3d ____, 2016 WL 4578362 (9th Cir. 2016) (en banc); *see also id.* at 693–94 (privacy interests must be "more palpable than mere possibilities"). An agency's claim that disclosure will result in an invasion of privacy must be "logical and plausible." *Cameranesi v. Defense*, ___ F.3d ____, 2016 WL 5827478, at *9 (9th Cir. 2016).

The generalized privacy claims that Defendants broadly apply to all but a few of their employees, irrespective of rank or role, are not plausible for several reasons. Defendants withhold the names of agency officials whose positions require stepping into the public eye. Ebadolahi Decl. ¶ 21 & Ex. N. And Defendants have disclosed the names of certain high-level public officials while withholding the names of other officials who hold the same rank. Ebadolahi Decl. ¶ 20 & Exs. M-1, M-2. *See Stonehill v. IRS*, 534 F. Supp. 2d 1, 12 (D.D.C. 2008) (ordering release of IRS agent's name where names of other IRS agents had been released). Finally, Defendants have redacted the names of agency officials from correspondence written by members of the public, where members of the public have already identified Defendants' employees and are presumably free to share those employees' names with whomever they wish. *See, e.g.*, Ebadolahi Decl. ¶ 22 & Ex. O. On these facts, Defendants' assertions that disclosure would undermine officials' privacy interests are neither logical nor plausible.

### 4. The Public Interest In Disclosure Outweighs Any Minimal Privacy Interests.

Finally, Exemptions 6 and 7(C) are also inapplicable here because the public's interest in disclosure outweighs any privacy interest.  The limited information that Plaintiffs seek will help answer questions surrounding CBP's official activities, namely, the manner in which CBP officials treat members of the public in the course of their interior enforcement operations.  Such information goes to the heart of FOIA's purpose.  *Cameranesi*, 2016 WL 5827478, at *8 (public interest in information "to show that responsible officials acted negligently or otherwise improperly in the performance of their duties" (quotation marks and citation omitted)); *Jud. Watch, Inc. v. DHS*, 598 F. Supp. 2d 93, 97 (D.D.C. 2009).

The release of certain Border Patrol agent names will enable members of the public and the media who review the disclosed records to determine whether, and how often, the same agents violate internal policies.  Similarly, releasing the names of higher-level and supervisory officials will allow the public to identify whether misconduct has happened repeatedly or disproportionately under the same person's watch.  The public records of CBP abuse cited herein and in Plaintiffs' original FOIA request, as well as the redacted records themselves, are evidence warranting a belief that government impropriety has occurred.  Ebadolahi Decl. ¶ 23 & Ex. P.

The public interest thus tilts strongly in favor of disclosing the withheld names because they are relevant to government employee misconduct.  *See, e.g.*, *Chang v. Navy*, 314 F. Supp. 2d 35, 42–45 (D.D.C. 2004) (describing public interest in records relating to agency discipline of employee misconduct); *Stern v. FBI*, 737 F.2d 84, 94 (D.C. Cir. 1984) (describing weight of public interest in disclosing the name of FBI Agent-in-Charge who participated in wrongdoing).

Courts have held that the public interest in the disclosure of information about public officials outweighs privacy interests in analogous contexts.  *See, e.g.*, *Casa de Md., Inc. v. DHS*, No. 10-1264, 2011 WL 288684, at *3–4 (4th Cir. Jan.

34

31, 2011) (affirming district court's conclusion that public interest in disclosing the names of supervisory, investigatory, and line-level ICE agents contained in internal investigation report outweighed privacy interests); *Schmidt v. Air Force*, No. 06-3069, 2007 WL 2812148, at *11 (C.D. Ill. Sept. 20, 2007) (public interest in documents that would provide "insight into the way in which the United States government was holding its [employee] accountable" "clearly outweigh[ed]" privacy interests).  For the same reasons, this Court should conclude that the public interest in disclosing the withheld names outweighs any privacy interests Defendants have established.

### CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion for summary judgment and grant Plaintiffs' cross-motion for summary judgment, or in the alternative defer final ruling until Defendants have conducted an adequate search and produced additional declarations and *Vaughn* indices and the Court has conducted any necessary *in camera* review.

DATED:  October 14, 2016         Respectfully submitted,

ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES

By **/s/ Mitra Ebadolahi**
Border Litigation Project
Staff Attorney

David Loy
Legal Director

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
Adrienna Wong
Staff Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNIVERSITY OF CALIFORNIA, IRVINE
SCHOOL OF LAW – IMMIGRANT
RIGHTS CLINIC
Anne Lai
Supervising Attorney

*Attorneys for Plaintiffs*