Mitra Ebadolahi (SBA 275157)
David Loy (SBA 229235)
Zoë McKinney (SBA 312877)
ACLU FOUNDATION OF SAN DIEGO
AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187
mebadolahi@aclusandiego.org
davidloy@aclusandiego.org
zmckinney@aclusandiego.org

Anne Lai (SBA 295394)
University of California, Irvine School of Law
Immigrant Rights Clinic
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
alai@law.uci.edu

Adrienna Wong (SBA 282026)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500 ext. 204
awong@aclusocal.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

American Civil Liberties Union of San Diego and Imperial Counties, American Civil Liberties Union of Southern California, Anne Lai and Sameer Ashar,

Plaintiffs,

v.

United States Department of Homeland Security, United States Customs and Border Protection,

Defendants.

Case No.: 8:15-cv-00229-JLS-RNB

**REPLY IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

**Date: January 27, 2017**
**Time: 2:30 p.m.**
**Judge: Hon. Josephine L. Staton**
**Courtroom: 10A**

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ..................................................................iv

**LIST OF ACRONYMS** ....................................................................ix

**INTRODUCTION** ..........................................................................1

**ARGUMENT** ...............................................................................1

  **I.**   **Defendants Have Failed to Conduct an Adequate Search.** ........................2

  **II.**  **Defendants' Withholdings Are Unlawful.** ..................................7

    **A. Defendants Are Unlawfully Withholding the CBP Enforcement Law Course ("ELC").** ....................................................................7

      **1. FOIA Exemption 5 Does Not Apply to the ELC.** ...................8

      **2. FOIA Exemption 7(E) Does Not Apply to the ELC.** ...........11

    **B. CBP's Withholdings of Belatedly-Produced Border Patrol Academy Materials Are Unlawful.** ..............................................13

    **C. CBP Has Failed to Establish That Other Responsive Records Are Exempt Under 7(E).** ...................................................14

      **1. Improperly Withheld CBP Policy Memoranda.** ...................14

      **2. Other Unlawful CBP Exemption 7(E) Withholdings.** ..........15

    **D. Defendants Cannot Withhold Names of CBP Officials.** ...............17

      **1. Exemption 6 Threshold Has Not Been Satisfied.** ................17

      **2. Exemption 7 Threshold Has Not Been Satisfied.** ................19

      **3. Defendants Improperly Failed to Balance Competing Interests.** .......20

  **III. Defendants Have Not Disclosed Reasonably Segregable Material.** ..........24

  **IV. Disclosure of the Withheld Documents, or *In Camera* Review, Are The**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Appropriate Remedies.**.......................................................................................25

**CONCLUSION** ................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*ACLU v. FBI*,
  No. C 12-03728 SI, 2013 WL 3346845 (N.D. Cal. July 1, 2013) .................. 12

*Aguirre v. SEC*,
  551 F. Supp. 2d 33 (D.D.C. 2008) ................................................... 18

*AIC v. DHS*,
  30 F. Supp. 3d 67 (D.D.C. 2014) .................................................... 12

*AMCO Ins. Co. v. Madera Quality Nut LLC*, No. 1:04-cv-06456-SMS,
  2006 WL 931437 (E.D. Cal. Apr. 11, 2006) ....................................... 11

*Antonelli v. ATF*,
  No. CIV.A. 04-1180 CKK, 2005 WL 3276222 (D.D.C. Aug. 16,
  2005) ...................................................................................... 19

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) .................................................. 14, 15

*Bothwell v. Brennan*,
  No. 13-cv-05439-JSC, 2015 WL 6689387 (N.D. Cal. Nov. 3, 2015) .............. 6

*Bowen v. FDA*,
  925 F.2d 1225 (9th Cir. 1991) ....................................................... 14

*Brennan Ctr. for Just. v. DOJ*,
  697 F.3d 184 (2d Cir. 2012) ........................................................... 8

*Brown v. DOJ*,
  No. 1:13-CV-01122-LJO, 2015 WL 1237274 (E.D. Cal. Mar. 17,
  2015) ...................................................................................... 23

*Casa de Md., Inc. v. DHS*,
  409 F. App'x 697 (4th Cir. Jan. 31, 2011) ........................................ 23

*Citizens Comm'n on Hum. Rts. v. FDA*,
  No. 92CV5313, 1993 WL 1610471 (C.D. Cal. May 10, 1993) ....................... 18

*Coastal States Gas Corp. v. Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ........................................... 7, 8, 9, 10

*Coleman v. Lappin*,
  535 F. Supp. 2d 96 (D.D.C. 2008) ................................................... 19

*Cottone v. Reno*,
  193 F.3d 550 (D.C. Cir. 1999) ....................................................... 14

*Delaney, Migdail & Young, Chartered v. IRS*,
  826 F.2d 124 (D.C. Cir. 1987) ................................................... 10, 11

*DiBacco v. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ......................................................... 6

*Elec. Frontier Found. v. DOJ*,
  739 F.3d 1 (D.C. Cir. 2014) ........................................................... 8

*Elec. Privacy Info. Ctr. v. DOJ*,
  584 F. Supp. 2d 65 (D.D.C. 2008) ................................................... 10

*EPA v. Mink*,

iv

410 U.S. 73 (1973) ................................................................................ 1

*FBI v. Abramson,*
456 U.S. 615 (1982) ........................................................................... 18

*Feshbach v. SEC,*
5 F. Supp. 2d 774 (N.D. Cal. 1997).................................................... 11

*Fiduccia v. DOJ,*
185 F.3d 1035 (9th Cir. 1999)........................................................ 8, 24

*Gordon v. FBI,*
390 F. Supp. 2d 897 (N.D. Cal. 2004)................................................ 18

*Greenpeace USA Inc. v. EPA,*
735 F. Supp. 13 (D.D.C. 1990) .......................................................... 20

*Hamdan v. DOJ,*
797 F.3d 759 (9th Cir. 2015) ............................................... 15, 17, 25

*Hardy v. Defense,*
No. CV-99-523-TUC-FRZ, 2001 WL 34354945 (D. Ariz. Aug. 27,
2001) .................................................................................................. 21

*Heeney v. FDA,*
No. CV 97–5461 MMM (CTx), 1999 WL 35136489 (C.D. Cal.
Mar. 16, 1999) ................................................................................... 14

*Hunt v. FBI,*
972 F.2d 286 (9th Cir. 1992) ............................................................. 23

*In re Sealed Case,*
146 F.3d 881 (D.C. Cir. 1998) ........................................................... 10

*Jefferson v. DOJ OPR,*
284 F.3d 172 (D.C. Cir. 2002) ........................................................... 16

*Kimberlin v. DOJ,*
139 F.3d 944 (D.C. Cir. 1998) ..................................................... 16, 21

*L.A. Times Commc'ns, LLC v. Army,*
442 F. Supp. 2d 880 (C.D. Cal. 2006)................................................... 2

*Lahr v. NTSB,*
569 F.3d 964 (9th Cir. 2009)......................................................... 7, 22

*Law. Comm. for Civ. Rts. of S.F. Bay Area v. Treasury,*
534 F. Supp. 2d 1126 (N.D. Cal. 2008)........................................... 3, 6

*Law. Comm. For Hum. Rts. v. INS,*
721 F. Supp. 552 (S.D.N.Y. 1989) ..................................................... 21

*Leadership Conf. on C.R. v. Gonzales,*
404 F. Supp. 2d 246 (D.D.C. 2005) ................................................... 18

*Lissner v. Customs Serv.,*
241 F.3d 1220 (9th Cir. 2001)........................................................... 22

*Long v. Office of Pers. Mgmt.,*
692 f 3d 185 (2d Cir. 2012)............................................................... 22

*MacLean v. Army,*
No. 05–CV–1519 WQH(CAB), 2007 WL 935604 (S.D. Cal. Mar.
6, 2007)............................................................................................... 16

*Manna v. DOJ,*
  51 F.3d 1158 (3d Cir. 1995) ...................................................................22

*Maricopa Audubon Soc'y v. Forest Serv.,*
  108 F.3d 1089 (9th Cir. 1997)...............................................................2, 7

*Mead Data Central, Inc. v. Air Force,*
  566 F.2d 242 (D.C. Cir. 1977) .............................................................8, 24

*Milner v. Navy,*
  131 S. Ct. 1259 (2011) .........................................................................7, 11

*Minnis v. USDA,*
  737 F.2d 784 (9th Cir. 1984) ...................................................................18

*Muttitt v. State,*
  926 F. Supp. 2d 284 (D.D.C. 2013) .........................................................24

*NACDL v. Justice,*
  ___ F.3d ____, 2016 WL 7377218 (D.C. Cir. 2016) ...............................24

*Nat'l Ass'n of Home Builders v. Norton,*
  309 F.3d 26 (D.C. Cir. 2002)....................................................................18

*Nat'l Council of La Raza v. DOJ,*
  411 F.3d 350 (2d Cir. 2005) ......................................................................9

*Nat'l Immig. Project v. DHS,*
  842 F.Supp. 2d 720 (S.D.N.Y. 2012).....................................................9, 10

*Nation Mag. Wash. Bureau v. Customs Serv.,*
  71 F.3d 885 (D.C. Cir. 1995).................................................................4, 6

*New England Apple Council v. Donovan,*
  725 F.2d 139 (1st Cir. 1984) ...............................................................22, 23

*Nix v. United States,*
  572 F. 2d 998 (4th Cir. 1978)...............................................................22, 23

*NLRB v. Robbins Tire & Rubber Co.,*
  437 U.S. 214 (1978) ...................................................................................1

*NLRB v. Sears, Roebuck & Co.,*
  421 U.S. 132 (1975) ...................................................................................8

*Oglesby v. Army,*
  920 F.2d 57 (D.C. Cir. 1990).....................................................................6

*People for Am. Way Found. v. DOJ,*
  451 F. Supp. 2d 6 (D.D.C. 2006) ...............................................................5

*Perry v. Block,*
  684 F.2d 121 (D.C. Cir. 1982) ...................................................................2

*Pinson v. DOJ,*
  80 F. Supp. 3d 211 (D.D.C. 2015) .............................................................6

*Prudential Locations LLC v. HUD,*
  739 F.3d 424 (9th Cir. 2013) ...................................................................18

*Rosenfeld v. DOJ,*
  57 F.3d 803 (9th Cir. 1995)................................................................12, 15

*SafeCard Servs., Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) ...............................................................11

*Sakamoto v. EPA*,
  443 F. Supp. 2d 1182 (N.D. Cal. 2006)...........................................................16

*Salas v. OIG*,
  577 F. Supp. 2d 105 (D.D.C. 2008) .................................................................23

*Schiller v. NLRB*,
  964 F.2d 1205 (D.C. Cir. 1992) .......................................................................11

*Schmidt v. Air Force*,
  No. 06-3069, 2007 WL 2812148 (C.D. Ill. Sept. 20, 2007) ...........................23

*Shannahan v. IRS*,
  672 F.3d 1142 (9th Cir. 2012) ...........................................................................8

*Shapiro v. Justice*,
  ___ F. Supp. 3d ____, 2016 WL 5922295 (D.D.C. Oct. 11, 2016) ..................5

*State v. Ray*,
  502 U.S. 164 (1991) .........................................................................................20

*Sullivan v. Veterans Admin.*,
  617 F. Supp. 258 (D.D.C. 1985) ......................................................................21

*Sussman v. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) .........................................................................2

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ...........................................................................8

*Valencia-Lucena v. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) .......................................................................6, 7

*Varville v. Rubin*,
  No. CIV 3:96CV00629AVC, 1998 WL 681438 (D. Conn. Aug. 18,
  1998).................................................................................................................20

*Weiner v. FBI*,
  943 F.2d 972 (9th Cir. 1991) ..............................................................................8

*Weisberg v. DOJ*,
  745 F.2d 1476 (D.C. Cir. 1984) ......................................................................2, 4

*Weisberg v. DOJ*,
  705 F.2d 1344 (D.C. Cir. 1983) .........................................................................6

*Wilbur v. CIA*,
  355 F.3d 675 (D.C. Cir. 2004) ...........................................................................6

*Wolf v. CIA*,
  569 F. Supp. 2d 1 (D.D.C. 2008) .......................................................................6

*Wood v. FBI*,
  432 F.3d 78 (2d Cir. 2005) ...............................................................................22

*Youngblood v. Comm'r*,
  No. 2:99–CV–9253–R(RNBX), 2000 WL 852449 (C.D. Cal. Mar.
  6, 2000).............................................................................................................6

*Zemansky v. EPA*,
  767 F.2d 569 (9th Cir. 1985) ..............................................................................2

## STATUTES

5 U.S.C. § 552(a)(2)(A)........................................................................................8

5 U.S.C. § 552(a)(2)(B) ........................................................................8

5 U.S.C. § 552(a)(2)(C) ........................................................................8

5 U.S.C. § 552(a)(4)(B) ...........................................................2, 14, 25

5 U.S.C. § 552(b) ................................................................................24

5 U.S.C. § 552(b)(6) ....................................................................17, 20

5 U.S.C. § 552(b)(7)(C) ......................................................................20

5 U.S.C. § 552(b)(7)(E) ......................................................................12

1

## LIST OF ACRONYMS

| | |
|---|---|
| DHS | U.S. Department of Homeland Security |
| CBP | U.S. Customs and Border Protection |
| OC | CBP Office of the Commissioner |
| OES | CBP OC Office of Executive Secretariat |
| SITROOM | CBP OC Situation Room |
| IA | CBP Office of Internal Affairs |
| JICMS | Joint Integrity Case Management System DHS IA System of Record |
| OPA | CBP Office of Public Affairs |
| HRM | CBP Office of Human Resources Management |
| LER | CBP HRM Division of Labor and Employee Relations |
| DRB | CBP HRM Discipline Review Board |
| ENFORCE | CBP Database |
| ELC | CBP Enforcement Law Course |
| ICE | U.S. Immigration and Customs Enforcement |
| OPR | ICE Office of Professional Responsibility |
| OIG | DHS Office of Inspector General |
| AUD | DHS OIG Office of Audits |
| ISP | DHS OIG Office of Inspections |
| IQO | DHS OIG Office of Integrity and Quality Oversight |
| INV | DHS OIG Office of Investigations |
| CRCL | DHS Office of Civil Rights and Civil Liberties |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Congress enacted FOIA to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Defendants have resisted the requirements of FOIA at every turn. They ignored Plaintiffs' FOIA request for seven months, forcing litigation. They defaulted on their obligation to search for and produce responsive records. Intentionally or not, they misled this Court in their opening motion, claiming they had fully complied with their FOIA obligations. Only in response to Plaintiffs' cross-motion for summary judgment did Defendants finally search a key subcomponent, the Border Patrol Academy, and produce additional redacted records to Plaintiffs—more than twelve months after this Court's production deadline, and twenty-seven months after Plaintiffs' original request.

Defendants' belated production of records in response to this lawsuit does not resolve their ongoing disregard for core FOIA obligations. They have (1) unreasonably restricted their search by ignoring obvious terms likely to produce responsive records; (2) improperly withheld numerous documents that do not qualify for exemption; and (3) violated their duty to disclose reasonably segregable non-exempt material. Because Defendants have not carried their burden to prove full compliance with FOIA, Plaintiffs are entitled to summary judgment.[1]

**ARGUMENT**

In evaluating the parties' cross-motions, it is important to recall FOIA's purpose: to provide "access to official information long shielded unnecessarily from public view[,] and [ ] to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80

---

[1] To aid the Court, Plaintiffs submit a supplemental statement of uncontroverted facts herewith identifying matters that are no longer at issue in this litigation.

(1973). These principles have even greater weight where, as here, the government entities blocking public access to information engage in persistent misconduct and resist any form of accountability.[2]

FOIA requires *de novo* review of an agency's response to a records request. 5 U.S.C. § 552(a)(4)(B). "Courts must apply [the government's] burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims." *Maricopa Audubon Soc'y v. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quotation marks and citation omitted). For this reason, "the underlying facts and possible inferences are construed in favor of the FOIA requester." *L.A. Times Commc'ns, LLC v. Army*, 442 F. Supp. 2d 880, 894 (C.D. Cal. 2006) (citations omitted). Where, as here, Plaintiffs' submissions create genuine issues of fact, Defendants are not entitled to summary judgment in their favor. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *see also, e.g.*, *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1115–16 (D.C. Cir. 2007).

## I.    Defendants Have Failed to Conduct an Adequate Search.

To "fully discharge[] its obligations under FOIA," the government must "demonstrat[e] that it has conducted a search *reasonably calculated* to uncover *all relevant documents*." *L.A. Times*, 442 F. Supp. 2d at 893 (citation omitted; emphases added). In evaluating a search, a court must view all facts "in the light most favorable to the requester." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (same). While FOIA

---

[2] *See* Pls.' Cross Mot. Summ. J. 1–3, ECF No. 50 ("CMSJ"); Rickerd Decl., ECF No. 55; Realmuto Decl., ECF No. 56. Defendants claim that Plaintiffs "[a]ttempt[] to shift the focus of this litigation" by providing this Court with important background information about CBP and its interior enforcement activities within the United States. Defs.' Opp./Reply 2 n.1, ECF No. 59 ("Opp."). In actuality, this information is crucial to understanding patterns of misconduct that are directly relevant to the instant matter, including CBP's consistent refusal to timely share information with the public. Indeed, CBP's refusal to proactively disclose critical information necessitated and informed the scope of Plaintiffs' FOIA request.

2

does not require "that a search be perfect," Defendants must still prove the search was "conducted in good faith using methods that are likely to produce the information requested if it exists." *Law. Comm. for Civ. Rts. of S.F. Bay Area v. Treasury*, 534 F. Supp. 2d 1126, 1130 (N.D. Cal. 2008) [hereinafter *LCCR*]. Defendants—who improperly distorted Plaintiffs' request and ignored obvious search terms—cannot meet this burden.

*First*, as CBP's former Assistant Commissioner James F. Tomsheck explained, members of the public are unlikely to use the term "roving patrol" to describe interactions with CBP or Border Patrol when alleging government misconduct. CMSJ 7–8; Tomsheck Decl. ¶¶ 17–18, ECF No. 54. Defendants argue their searches were nonetheless reasonable because "some of the locations searched would not be expected to contain documents created by the general public," and, regardless, "in many instances additional search terms beyond a variant of 'roving patrol' were used[.]" Opp. 5.

Defendants' statements are belied by the record. While some of the records requested might not have been created by members of the public, others *would* have been.[3] Moreover, even where members of the public were not involved in the *creation* of certain records, it is reasonable to presume that records relating to Defendants' investigations of civilian complaints might adopt the complainants' terminology; Defendants' extremely limited search terms would unreasonably exclude such records. In addition, most Defendant components limited their searches to variants of the term "roving patrol" and did not include other substantive terms.[4] Even those few components that did use additional terms

---

[3] *Compare* Items 1–3 of Plaintiffs' FOIA request (seeking government-generated records) *with* Item 9 (seeking individual and non-governmental verbal and written complaints). Ebadolahi Decl., Ex. A 14, 16, ECF No. 53-1.

[4] Defendants imply that many additional terms were consistently employed. *See* Opp. 3, 5–6. Defendants' own declarations undermine these claims. *See* Burroughs Decl. ¶¶ 11, 16, 20–24, ECF No. 40; Tyrrell Decl. ¶ 13, ECF No. 41; Marwaha Decl. ¶¶ 13, 17, 25–26, ECF No. 42; Pineiro Decl. ¶ 10, ECF No. 43; *see also*

3

unreasonably restricted these terms.[5]

*Second*, Defendants ignored obvious search terms. Since February 2016, Plaintiffs consistently have explained to Defendants why their search terms are too narrow to capture the full range of relevant agency contacts with civilians, including not only vehicular stops but also pedestrian encounters and public transportation inspections.[6] In general, Defendants misapprehend the purpose served by Plaintiffs' additional suggested search terms. These suggested terms reflect key omissions, which in turn undermine Defendants' assertions that their searches were legally adequate. It is Defendants' burden, not Plaintiffs', to establish that the searches were reasonably calculated to uncover all relevant records. The universe of "relevant records" must be defined with reference to the underlying FOIA request. *See Nation Mag. Wash. Bureau v. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995) ("To assess the adequacy of [the] search, we must first ascertain the scope of the request itself."); *Weisberg*, 745 F.2d at 1485 ("The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." (citations omitted)). Here, Plaintiffs' request explicitly sought records pertaining to "any field operations involving roving vehicle or pedestrian stops by Border Patrol agents[.]" Ebadolahi Decl. Ex. A 14. To be reasonable, therefore, Defendants' search term list must have been capable of uncovering pedestrian-related records.

_____

CMSJ 7 n.11. Defendants' use of *geographical* terms ("El Centro," "San Diego") is alone inadequate to compensate for their overly-narrow *subject matter* terms.

[5] Tell Decl. ¶ 6, ECF No. 61 (El Centro Sector shared drive searched using "roving patrol," "vehicle stop," "authority," "training," and "complaint"—but not, *e.g.*, "pedestrian," "civil rights," "profiling," "force," "constitutional," or "misconduct"); *id.* ¶ 7 (San Diego Sector shared drive inexplicably searched using even more limited terms, including only "roving patrol," "vehicle stop," and "complaint").

[6] Ebadolahi Decl. Ex. B 26, ECF No. 53-1 ("[W]e do not believe the search terms used by Defendants were adequate or reasonably calculated to produce all responsive records. . . . roving patrols operations include a variety of activities, including vehicle stops; *inspections of passengers on public transportation*; *contacts with pedestrians*; and *various other scenarios*." (emphases added)).

4

*Third*, Defendants have omitted critical terms in searching for records held by DHS entities responsible for investigating civil rights complaints and official misconduct. CMSJ 7 (omission of key terms from CRCL, OIG, and ICE OPR searches). In reply, Defendants speculate that including such terms "would . . . sweep in substantial amounts of nonresponsive material." Opp. 4.[7] Defendants were, however, able to search CBP's Office of Internal Affairs (which investigates employee misconduct complaints) using the terms "warrantless stop," "warrantless seizure," "questionable inspection," "unauthorized search," "forcibly removed," and "without consent." Burroughs Decl. ¶ 24. This fact undermines Defendants' contention that including additional terms reasonably calculated to uncover all relevant documents would necessarily "sweep in large amounts of nonresponsive material." Moreover, inexplicably inconsistent search terms across components with similar oversight mandates indicate unreasonably narrow searches.

In any event, agencies cannot avoid their legal obligations to develop reasonable search terms by protesting that searches *could* yield nonresponsive material. Rather, agencies must employ measures to narrow search results once their initial searches—using legally adequate terms—have been completed. *See, e.g.*, *Shapiro v. Justice*, ___ F. Supp. 3d ____, 2016 WL 5922295, at *4 (D.D.C. Oct. 11, 2016) (rejecting agency claim that comprehensive search "using 'broadly generic search terms'" would yield enormous cache of documents; directing agency to run additional searches using terms suggested by plaintiff; and concluding that if searches generated "an unwieldy number of records," the agency could file "renewed motion for summary judgment"); *People for Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6, 15–16 (D.D.C. 2006) (search of 40,000 documents spread across multiple agencies was not overly burdensome; Defendants had not demonstrated

_____

[7] Supp. Tyrrell Decl. ¶ 12, ECF No. 64; Jackson Decl. ¶ 16, ECF No. 62; Supp. Marwaha Decl. ¶¶ 9, 11, ECF No. 63.

why initial search results could not be narrowed). None of Defendants' submissions establish that such narrowing is unreasonable.[8] Indeed, it defies logic to presume that Defendants—in particular oversight entities like CRCL, OIG, and ICE OPR—lack the capacity to narrow search results; these entities must routinely track and sort complaints and other records in their ordinary course of business.

*Fourth*, Plaintiffs have identified specific indications that responsive materials have been overlooked. CMSJ 10. Defendants claim that this is "improper speculation." Opp. 13–14.[9] Yet these are precisely the type of indications that courts routinely rely on to conclude that agency searches are legally inadequate. *See, e.g.*, *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999); *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

*Finally*, Plaintiffs have identified at least seven component offices with "files likely to contain responsive records" that were not searched at all. *Nation Mag.*, 71 F.3d at 890; CMSJ 8–9; Tomsheck Decl. ¶¶ 7–16. In response, Defendants belatedly searched a single one of these entities (the Border Patrol Academy),

---

[8] Defendants suggest—for the first time—that undertaking legally adequate searches would be unduly burdensome. Opp. 4. Their declarations, however, lack the specific information courts require before holding further searches unduly burdensome. *See, e.g.*, *Pinson v. DOJ*, 80 F. Supp. 3d 211, 217 (D.D.C. 2015) ("But where an agency vaguely characterizes a search as 'costly' and notes that such a search would 'take many hours to complete,' this Court has rejected the agency's claim as inadequate in explaining why the search would be unreasonably burdensome." (citations omitted)); *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) ("Courts are entitled to rely upon an agency affidavit for an explanation of why a further search would be 'unduly burdensome' when the affidavit is relatively detailed, nonconclusory, and not impugned by evidence in the record of bad faith on the part of the agency. Courts often look for a detailed explanation by the agency regarding the *time* and *expense* of a proposed search in order to assess its reasonableness." (quotation marks and citations omitted; emphases added)).

[9] The cases on which Defendants here rely simply restate the bedrock FOIA principle that the operative legal standard in assessing an agency's search for records is that of "reasonableness." Opp. 13–14 (citing *DiBacco v. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015); *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *Oglesby v. Army*, 920 F.2d 57, 68 & n.13 (D.C. Cir. 1990); *Bothwell v. Brennan*, No. 13-cv-05439-JSC, 2015 WL 6689387, at *3 (N.D. Cal. Nov. 3, 2015); *Youngblood v. Comm'r*, No. 2:99–CV–9253–R(RNBX), 2000 WL 852449, at *6 (C.D. Cal. Mar. 6, 2000)). The question before this Court is *whether* Defendants' searches were *in fact* reasonable. *LCCR*, 534 F. Supp. 2d at 1130.

producing hundreds of new pages of records at the eleventh hour.[10] Defendants' ongoing refusal to search at least two of the remaining six components appears legally improper. Supp. Tomsheck Decl. ¶¶ 1–9. *See, e.g.*, *Valencia-Lucena*, 180 F.3d at 327 ("[I]f an agency has reason to know that certain places *may* contain responsive documents, it is obligated under FOIA to search [them] barring an undue burden." (citations omitted; emphasis added)).

More fundamentally, Defendants fail to address the critical question whether any responsive files would have been located from these six additional components *had Defendants employed legally adequate search terms*. Without answering this question, Defendants are not entitled to summary judgment as to the propriety of having omitted these components from their searches.[11]

## II.    Defendants' Withholdings Are Unlawful.

Defendants' withholdings also violate the core FOIA principle that exemptions must be narrowly construed. *Milner v. Navy*, 131 S. Ct. 1259, 1265 (2011). Defendants have failed to prove their asserted exemptions by offering affidavits "detailed enough for the district court to make a *de novo* assessment" of any claimed exemption. *Maricopa Audubon*, 108 F.3d at 1092 (citation omitted); *see also Lahr v. NTSB*, 569 F.3d 964, 989 (9th Cir. 2009).

### A.    Defendants Are Unlawfully Withholding the CBP Enforcement Law Course ("ELC").

In support of their complete withholding of the 1133-page ELC, Defendants' *Vaughn* index includes just one conclusory sentence, and the attendant declaration just one paragraph replete with vague overgeneralizations. Vaughn II, No. 42; Burroughs Decl. ¶ 38. This is "patently inadequate." CMSJ 14 (citing *Coastal States Gas Corp. v. Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980); *Shannahan v. IRS*,

---

[10] These newly-produced records are improperly redacted. *See infra*, Section II.B.

[11] Defendants' legally deficient searches have excluded an unknown number of responsive records from any consideration by Plaintiffs or this Court.

672 F.3d 1142, 1148 (9th Cir. 2012); *Weiner v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991); *Mead Data Central, Inc. v. Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). "Where documents are withheld altogether, the requester needs a *Vaughn* index of considerable specificity to know what the agency possesses but refuses to produce." *Fiduccia v. DOJ*, 185 F.3d 1035, 1043 (9th Cir. 1999). Summary judgment for Defendants is improper for this reason alone.

### 1.  FOIA Exemption 5 Does Not Apply to the ELC.

Exemption 5 covers "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) [hereinafter *Sears*]. Defendants mistakenly claim the ELC is protected pursuant to the attorney-client privilege and work product doctrine.

*First*, the working law doctrine prevents agencies from relying on Exemption 5 to withhold the rules and interpretations that constitute their formal or informal policy. *See Sears*, 421 U.S. at 152–53. Defendants' *own declarations and descriptions* show that the ELC contains working law. CMSJ 13 (quoting Burroughs Decl. ¶¶ 38, 49). Defendants' submissions establish that the ELC (1) represents CBP's opinion about "what the law is," *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997); 5 U.S.C. § 552(a)(2)(A); (2) includes "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," 5 U.S.C. § 552(a)(2)(B); and (3) serves as an "administrative staff manual[]" that includes "instructions to staff that affect [ ] member[s] of the public," 5 U.S.C. § 552(a)(2)(C). Such materials must be disclosed. *Sears*, 421 U.S. at 152–54; *Brennan Ctr. for Just. v. DOJ*, 697 F.3d 184, 200–02 (2d Cir. 2012); *Coastal States*, 617 F.2d at 867.[12]

---

[12] Defendants rely erroneously on *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 9 (D.C. Cir. 2014). Opp. 14–15. There, an Office of Legal Counsel (OLC) memo was held not to be the FBI's "working law," as that memo had been prepared to address the *advisability* of a particular FBI policy but did *not* authoritatively state or determine that policy. 739 F.3d at 8. The "OLC did not have the authority to establish the 'working law' of the FBI." *Id.* By contrast, CBP's Office of Chief

1

2          To obfuscate this determinative fact, Defendants rely on *Nat'l Council of La*

3   *Raza v. DOJ*, 411 F.3d 350 (2d Cir. 2005). But *La Raza* is readily distinguishable as

4   it relates to an entirely different FOIA doctrine: agency adoption or "incorporation

5   by reference." *Id.* at 355–60.[13] Defendants' reliance on *Nat'l Immig. Project v. DHS*

6   is likewise misplaced; there, the court held that the Solicitor General's "unilateral

7   testimonial use" of a four-page email chain stripped it of work-product protection.

8   842 F. Supp. 2d 720, 727 (S.D.N.Y. 2012) [hereinafter *NIP*].

9          *Second*, Defendants have not established that Exemption 5 justifies the

10  withholding of any part of the ELC that is not working law. The attorney-client

11  privilege does not cover the ELC because, as Plaintiffs already have explained, it is

12  not confidential. CMSJ 15–16. Defendants have no answer; instead, they proclaim

13  "Plaintiffs' speculation needs no rebuttal." Opp. 17. Such statements underscore

14  Defendants' failure to grasp the basic rules of FOIA: it is *their* burden to establish

15  *affirmatively* the elements of attorney-client privilege, including confidentiality.

16  They have not done so, and thus may not invoke privilege to withhold the ELC.

17  *Coastal States*, 617 F.2d at 863.

18         Although they fail to establish confidentiality, Defendants insist that the ELC

19  is privileged as "legal advice by CBP lawyers to CBP personnel." Opp. 17. While

20  CBP's Office of Chief Counsel authored the ELC, Burroughs Decl. ¶ 38, it is

21  bedrock FOIA law that authorship by an individual holding a law degree does not

22  automatically exempt material from FOIA disclosure. *Coastal States*, 617 F.2d at

23  865. Moreover, even when an agency's affidavit states that a document contains

24  legal advice, courts require more. *Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d

_____

Counsel—which authored the ELC—*does* have the authority to establish CBP's
25  "working law," and did so in the ELC. Burroughs Decl. ¶ 38; *see also id.* ¶ 49 (ELC
    contains CBP's "views of legal constraints on [its] authorities").

26  [13] For this reason, Plaintiffs cited *La Raza* simply to support the contention that the
    "working law" doctrine, like the "incorporation/adoption" exceptions to Exemption
27  5, applies equally to attorney-client privilege and work product claims as to
    deliberative process privilege claims. *See* CMSJ 12 n.14.

28

65, 80 (D.D.C. 2008). Defendants ignore these legal precedents. Defendants also ignore the rule that "neutral, objective analyses of agency regulations" and the kind of "question and answer guidelines which might be found in an agency manual" such as the ELC are *not* covered by attorney-client privilege. CMSJ 16 (citing *Coastal States*, 617 F.2d at 863; *NIP*, 842 F. Supp. 2d at 729 n.10).

Finally, Defendants fail to establish that the work product doctrine applies. Defendants' own submissions show that the ELC "address[es] the major areas of law relevant to CBP's law enforcement mission'" "serves as a framework for [ ] legal training provided" to personnel; and "advises on legal authority." CMSJ 17 (quoting Burroughs Decl. ¶ 38). None of these qualities triggers work-product protection. Where, as here, a document functions "like an agency manual, fleshing out the meaning of the [laws the agency is] authorized to enforce," the government must establish that the document reflects attorney work-product addressing a "specific claim." *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987); *see also Coastal States*, 617 F.2d at 866 ("At the very least, the agency must establish in its affidavits or indexes that a specific claim had arisen, was disputed . . . and was being discussed in the memorandum[.]"); *cf.* Burroughs Decl. ¶ 38 (describing only possibility of hypothetical claims).

Ignoring this precedent, Defendants insist that no "specific claim" is required. Opp. 17. As Plaintiffs explain, the work product doctrine may justify withholdings absent a specific claim where (a) the function of the withheld documents in "foreseeable litigation" is clear to the court, and (b) the documents specifically advise the agency "of the types of legal challenges likely to be mounted *against a proposed program*, potential defenses available to the agency, and the likely outcome." *Delaney*, 826 F.2d at 127 (emphasis added); *see also In re Sealed Case*, 146 F.3d 881, 885–86 (D.C. Cir. 1998) (legal advice "to protect the client from future litigation *about a particular transaction*" was work product, where

"litigation over *this issue* was probable" (emphases added)); *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (citing *Delaney*), *abrogated on other grounds by Milner v. Navy*, 131 S. Ct. 1259 (2011). Neither prerequisite is established here.[14] It is insufficient to posit that "individuals in immigration removal proceedings and defendants in criminal proceedings commonly litigate the propriety of detentions, searches, and apprehensions, and claims sometimes arise that CBP enforcement personnel have allegedly violated civil rights." Opp. 17 (quoting Burroughs Decl. ¶ 38). If such generalizations were enough, virtually any document generically referencing legal standards applicable to an agency would be exempt, regardless of any connection to reasonably foreseeable legal challenges to specific programs. In that event, Exemption 5 would swallow the rule of FOIA disclosure. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) ("[T]he work product exemption, read over-broadly, could preclude almost all disclosure from an agency with substantial responsibilities for law enforcement.").

For all of the above reasons, Exemption 5 does not permit Defendants to withhold the ELC.

### 2. FOIA Exemption 7(E) Does Not Apply to the ELC.

Likewise, Defendants' reliance on Exemption 7(E) is improper.

First, CBP has failed to establish the requisite "'rational nexus' between

---

[14] Neither of the cases Defendants cite is to the contrary. Opp. 17. *See Feshbach v. SEC*, 5 F. Supp. 2d 774, 782 (N.D. Cal. 1997) (law enforcement agency can show document was prepared in anticipation of foreseeable litigation "by demonstrating that one of its attorneys prepared [the document] in the course of an investigation that was undertaken with litigation in mind" (citation omitted)); *AMCO Ins. Co. v. Madera Quality Nut LLC*, No. 1:04-cv-06456-SMS, 2006 WL 931437, at *15 (E.D. Cal. Apr. 11, 2006) ("A court should consider whether *but for the pendency or imminence of the litigation*, the document would have been created. Documents generated in the ordinary course of business, *or for another purpose unrelated to litigation*, are generally not subject to work product protection[.]" (citations omitted; emphases added)).

enforcement of a federal law and the document for which Exemption 7 is claimed." *Rosenfeld v. DOJ*, 57 F.3d 803, 808 (9th Cir. 1995). CMSJ 19 (citing Burroughs Decl. ¶¶ 47–49; Vaughn II No. 42). Defendants misstate the record when they claim that the ELC relates to CBP's "enforcement responsibilities for over 400 Federal statutes." Opp. 23 (citing Burroughs Decl. ¶¶ 2, 38). In fact, the Burroughs declaration does *not* connect the ELC to any specific federal law. *Compare* Burroughs Decl. ¶ 2 (mentioning 400 statutes generally) *with id.* ¶ 38 (discussing ELC but identifying no specific law or laws). "[I]t is not enough that CBP is a federal law enforcement agency tasked with the management, control, and protection of our nation's borders, the enforcement of over 400 federal statutes, and the responsibility for keeping terrorists and terrorist weapons out of the country." *AIC v. DHS*, 30 F. Supp. 3d 67, 74 (D.D.C. 2014) (alterations, quotation marks, and citation omitted). "Instead, the agency must still make a showing of law enforcement purposes by providing a sufficient explanation that establishes a rational nexus *between the withholding* and one of the agency's law enforcement duties, as well as a connection between an individual or incident and a possible security risk or violation of federal law." *Id.* (alterations, quotation marks, and citations omitted); *see also ACLU v. FBI*, No. C 12-03728 SI, 2013 WL 3346845, at *6 (N.D. Cal. July 1, 2013).

Even if the government had established a nexus, it has not established that any specific part—much less all—of the ELC includes "techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). Defendants aver that the ELC "encourag[es] certain practices and discourages others" and discusses what "techniques will or will not support prosecutions." Opp. 23 (quoting Burroughs Decl. ¶¶ 38, 49). This is inadequate, particularly since Exemption 7(E) only applies to "investigative techniques not generally known to the public." *Rosenfeld*, 57 F.3d at 815. Ignoring *Rosenfeld*, Defendants insist they

need not rebut Plaintiffs' "speculation." Opp. 23. Defendants fail once more to understand that *they* carry the burden of establishing proper reliance on FOIA's narrowly-construed exemptions. They have not done so here.[15]

### B. CBP's Withholdings of Belatedly-Produced Border Patrol Academy Materials Are Unlawful.

On December 9—over twelve months after the court-ordered production deadline in this matter—Defendants released 618 pages of new records responsive to Plaintiffs' request, despite having previously insisted that they had satisfied their search obligations under FOIA. Virtually all of these records are withheld in full pursuant to Exemptions 5 and 7(E). *See* Supp. Ebadolahi Decl. ¶ 3 & Ex. R.

This belated production suffers from the same deficiencies as those identified with respect to the ELC. Defendants' new index repeats one identical, boilerplate statement each for Exemption 5 and 7(E). *See Vaughn* Index for Border Patrol Academy Documents ("Vaughn III"), ECF No. 65-1. Likewise, CBP's supplemental declaration is replete with vague overgeneralizations. Supp. Tell Decl. ¶ 16 (Exemption 5), ¶ 25 (Exemption 7(E)). As explained, this is deficient, especially where documents have been withheld in full. Even had Defendants proffered legally adequate declarations and indices, they fail to establish either Exemption 5 or Exemption 7(E) applies. All of the arguments set forth *supra*, Section II.A, and in Plaintiffs' cross motion, CMSJ 11–21, apply with equal force to these legally improper withholdings.

As with the ELC, Defendants have failed to carry their burden of establishing that the belatedly-produced Border Patrol Academy records are exempt. Plaintiffs thus are entitled to summary judgment, and this Court should order all of these records released in full. Alternatively, and at a minimum, this Court should conduct an *in camera* review of all of these documents and Defendants' claimed

---

[15] Defendants likewise have failed to segregate and release non-exempt portions of the ELC. *See infra*, Section III.

exemptions, as provided for in FOIA. 5 U.S.C. § 552(a)(4)(B).

C.  **CBP Has Failed to Establish That Other Responsive Records Are Exempt Under 7(E).**

Besides the ELC and Border Patrol Academy records, CBP improperly has withheld a number of additional documents under Exemption 7(E).

## 1.  Improperly Withheld CBP Policy Memoranda.

Plaintiffs identified seven CBP policy memoranda improperly withheld pursuant to Exemption 7(E). CMSJ 22; Vaughn II Nos. 32, 33, 40, 41, 43, 86 & 100. Three of the seven are obsolete: current versions of these policies are in the public domain. Ebadolahi Decl. ¶¶ 14–15 & Exs. H–I; Vaughn II Nos. 43, 86, 100. Defendants have now released one memo, finally acknowledging their prior withholding to be "error." Opp. 18–19; Tell Decl. ¶ 26 & Ex. A. They maintain, however, that release of the remaining two memos "could reasonably be expected to risk circumvention of the law." Opp. 19. This position is absurd: only the current (new) policies are operative, and they are already public.[16] Release of now-inoperative versions of these policies cannot logically be claimed to "create a risk of circumvention." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011); *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("public-domain doctrine").[17]

For all of the six still-withheld memos, CBP's submissions are inadequate to

---

[16] Moreover, both of the obsolete records pertain to use of force policy. Vaughn II Nos. 86 & 100. But providing members of the public with information—historical or current—that would allow them to understand when officers use force is unrelated to *investigative* techniques and does not risk circumvention of any law. Rather, such disclosure would improve CBP's safe and effective enforcement of federal laws without unnecessary force.

[17] Defendants ignore these legal authorities, and instead cite a number of distinguishable cases for the irrelevant proposition that prior agency disclosures do not necessarily result in waiver of subsequent exemption claims. Opp. 19–20 (citing *Bowen v. FDA*, 925 F.2d 1225, 1228 (9th Cir. 1991); *Heeney v. FDA*, No. CV 97–5461 MMM (CTx), 1999 WL 35136489, at *11 (C.D. Cal. Mar. 16, 1999)). Plaintiffs' position has nothing to do with waiver, however. Rather, Plaintiffs explain that CBP's disclosure of *current*, *operative* versions of certain policies renders illogical the agency's insistence that release of *prior* versions of those policies would risk "circumvention of the law."

14

permit a *de novo* determination whether these records contain only law enforcement "techniques and procedures" or if instead they contain both "techniques and procedures" and also "guidelines." This is legally significant: to withhold "guidelines" under Exemption 7(E), the government must show that disclosure "could reasonably be expected to risk circumvention of the law." CMSJ at 22 (quoting *Hamdan v. DOJ*, 797 F.3d 759, 778 (9th Cir. 2015)). Defendants claim that CBP's *Vaughn* entries establish that these records contain only "law enforcement procedures." Opp. 18–19. This is false: although five of the entries contain the word "procedures," all six also mention "circumvention." Vaughn II Nos. 32, 33, 40, 41, 86 & 100.[18] As the concept of "circumvention" is only legally relevant to "guidelines," Defendants' submissions are at best internally inconsistent. Defendants have therefore failed to justify withholding these documents.[19]

### 2.  Other Unlawful CBP Exemption 7(E) Withholdings.

Finally, CBP invokes Exemption 7(E) to withhold a number of additional records responsive to Plaintiffs' request. *First*, CBP has withheld part or all of twelve documents containing various allegations of Border Patrol misconduct. CMSJ 24 (citing Ebadolahi Decl. ¶ 16 & Ex. J); *see also* Vaughn II Nos. 24, 26, 28, 35, 69, 70, 82, 89, 93, 94, 139, & 140. The record indicates that these documents pertain to civilian complaints against CBP officers, but it remains unclear whether these documents were "compiled for law enforcement purposes." *Rosenfeld*, 57 F.3d at 808.[20] Defendants appear to believe that *any* internal investigatory

---

[18] Vaughn II No. 86 lacks any mention of "techniques," "procedures," or "guidelines," mentioning only a "discussion of previous policy."

[19] Defendants assert that they need meet only a "relatively low bar" to justify withholding under Exemption 7(E). Opp. 20 (quoting *Blackwell*, 646 F.3d at 42). In *Blackwell*, the D.C. Circuit explained the "relatively low bar" required for an agency to establish "risk of circumvention"—just one component of the larger Exemption 7(E) analysis. Defendants' muddled submissions as to circumvention do not even clear this "low bar."

[20] The record described at Vaughn II No. 94 is, for example, entirely redacted, and neither the *Vaughn* index nor the Burroughs declaration provide sufficient detail to

documents are "compiled for law enforcement purposes." Opp. 20–21. In actuality, courts differentiate between two types of "investigatory files": (1) files connected with oversight of employees' performance of duties, and (2) files connected with investigations focusing directly on employees' "*specific alleged illegal acts* which could result in *civil or criminal sanctions*." *Jefferson v. DOJ OPR*, 284 F.3d 172, 177 (D.C. Cir. 2002) (emphases added; citation omitted).[21] The first category of "investigatory files" are not 7(E) exempt; although the second may be, it remains the government's burden to establish that Exemption 7(E) properly applies.[22] The record before this Court shows that the redacted documents pertain to a variety of Border Patrol misconduct (verbal abuse, unprofessional behavior, confiscation of money, harassment, etc.), but does *not* establish specific alleged illegal acts. FOIA does not allow Border Patrol to read Exemption 7(E) so broadly and thereby shield its misconduct from public scrutiny.

*Second*, Defendants have redacted agency guidelines regarding prosecutions, programs, and seizures, without establishing the requisite risk of circumvention. *See* CMSJ 25–26; Vaughn I at 17–18 (describing withheld "guidance" on variety of topics). In defense of these withholdings, Defendants attempt to evade the "risk of

---

evaluate Defendants' withholdings. *Cf.* Opp. 20.

[21] Defendants' reliance on *Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1194 (N.D. Cal. 2006), and *MacLean v. Army*, No. 05–CV–1519 WQH(CAB), 2007 WL 935604, at *8 (S.D. Cal. Mar. 6, 2007), Opp. 20–21, is misplaced. Unlike the records at issue here, all of the records in those cases clearly involved investigations of *specific alleged illegal acts*.

[22] Defendants argue that the record described at Vaughn II No. 35 is 7(E) exempt because the redactions therein excerpt a policy memo (the withholding of which Plaintiffs also challenge). Opp. 20. Yet this document makes no mention of "specific alleged illegal acts" that could result in "civil or criminal sanctions," *Jefferson*, 284 F.3d at 177; rather, it is a letter of reprimand apparently connected with employee oversight. This is not 7(E) exempt. *See, e.g.*, *Kimberlin v. DOJ*, 139 F.3d 944, 947 (D.C. Cir. 1998) (material compiled in the course of internal agency monitoring or supervision of employees not exempt under Exemption 7). Additionally, the redactions appear to relate to a guideline designed to ensure CBP accountability and professionalism, so there can be no plausible argument that disclosure would risk circumvention of the law.

16

circumvention" prong of the Exemption 7(E) analysis by unilaterally declaring all "guidance" to be "procedures." Opp. 22. This Court must, however, assess *de novo* whether the withheld guidance are properly classified as "procedures" or "guidelines." If they are the latter, Defendants must establish a risk of circumvention before they may rely on Exemption 7(E). *Hamdan*, 797 F.3d at 778.

Defendants are mistaken that "circumvention of the law" can result from disclosure of "the type and quantum of evidence sought to apprehend or pursue charges against a suspect." Opp. 22. The law itself makes such information public. Statutes and regulations describe the elements of unlawful conduct, and case law establishes the evidence sufficient to establish probable cause or proof beyond a reasonable doubt. The government often publishes memoranda detailing enforcement processes. *See, e.g.*, Memorandum from ICE Director John Morton to Field Office Directors, Special Agents in Charge, & Chief Counsel (June 17, 2011), http://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf. Defendants cannot plausibly claim circumvention would result from disclosing records containing similar information.

Defendants' Exemption 7(E) withholdings are unlawful.

**D.    Defendants Cannot Withhold Names of CBP Officials.**

Defendants still fail to justify their blanket redaction of CBP officials' names from responsive documents pursuant to Exemptions 6 and 7(C).

**1.  Exemption 6 Threshold Has Not Been Satisfied.**

Although Exemption 6 applies only to "personnel and medical and similar files," Defendants do not establish that their redactions are from such files. 5 U.S.C. § 552(b)(6). Instead, Defendants suggest that *all* the redacted records can be considered "similar files" within the meaning of Exemption 6. Opp. 27. Defendants would rewrite FOIA to exempt from disclosure "personnel and medical and *all other files*." But the statute's plain text makes clear that only a specific subset of

government files—those "similar" to medical and personnel files—fall within Exemption 6. *See also, e.g.*, *Aguirre v. SEC*, 551 F. Supp. 2d 33, 53 (D.D.C. 2008) (though definition of "similar files" "appears to be all encompassing, it *does have limits*" (emphasis added)).[23] Defendants fault Plaintiffs for ascribing a "cramped reach" to Exemption 6, but a narrow construction is precisely what the law requires. *See, e.g.*, *FBI v. Abramson*, 456 U.S. 615, 636 & n.5 (1982). At a minimum, a less than all-inclusive definition of "similar files" should apply, because FOIA's presumption in favor of disclosure is "at its zenith" under Exemption 6. *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 37 (D.C. Cir. 2002).

Plaintiffs have shown that Defendants have redacted the names of agency officials from documents containing *no details* about them as individuals other than their names and titles.[24] Ebadolahi Decl., Ex. L; *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (a name "is not personal or intimate information, such as a home address or a social security number, that normally would be considered protected information under FOIA Exemption 6"). Defendants ignore on-point cases specifically rejecting the application of the "similar files" exemption to withholdings nearly identical to theirs. *See, e.g.*, *Gordon v. FBI*, 390 F. Supp. 2d 897, 902 (N.D. Cal. 2004); *Aguirre*, 551 F. Supp.

---

[23] Not one of the cases on which Defendants rely supports the proposition that *any and all* files satisfy the Exemption 6 threshold. Opp. 27. *See Prudential Locations LLC v. HUD*, 739 F.3d 424, 429 (9th Cir. 2013) (discussing citizenship files; reports on interviews with Haitian nationals; an accident report containing the names and other identifying information of agency personnel who responded to a wildfire that killed Forest Service employees; and a list of names and addresses of employees eligible to vote in a union representation election); *Citizens Comm'n on Hum. Rts. v. FDA*, No. 92CV5313, 1993 WL 1610471, at *12 (C.D. Cal. May 10, 1993) (quoting *Minnis v. USDA*, 737 F.2d 784, 786 (9th Cir. 1984), which held that "[l]ists of names and addresses meet" threshold).

[24] Defendants' production is replete with redactions of names of CBP officials listed simply as authors or recipients of various documents. Plaintiffs have produced select examples of such redactions. *See* Ebadolahi Decl., Ex. L. Filing every improper redaction would be too unwieldy and an inefficient imposition on judicial resources. The existing record provides the Court with sufficient basis to order Defendants to disclose all names of officials listed as authors, senders, or recipients of records that do not disclose medical, personnel, or similar details.

2d at 53–54. While Defendants assert that Exemption 6 "comfortably covers" organization charts, Opp. 28, they cite no supporting authority; nor do they cite any case in support of their contention that the names of senior officials merely listed as authors, senders, or recipients of correspondence about other individuals "readily comes within Exemption 6." Opp. 29. Plaintiffs, in contrast, have cited contrary case law, which Defendants fail to address. CMSJ 29–30.

Defendants have not satisfied Exemption 6's threshold requirement.

### 2.  Exemption 7 Threshold Has Not Been Satisfied.

Defendants also fail to satisfy Exemption 7's threshold requirement: that withheld information be compiled for law enforcement purposes. Defendants offer only conclusory statements in support of their Exemption 7 name withholdings. Burroughs Decl. ¶ 45. Such "[v]ague and general references," which do not demonstrate how each redacted record was compiled, are inadequate. *Coleman v. Lappin*, 535 F. Supp. 2d 96, 98 (D.D.C. 2008); *see also Antonelli v. ATF*, No. CIV.A. 04-1180 CKK, 2005 WL 3276222, at *7 (D.D.C. Aug. 16, 2005).

Moreover, Defendants' generalized statements about their purposes for compiling the redacted records lack credibility. Plaintiffs have presented three examples of documents containing redacted names that were *not* compiled for law enforcement purposes. Defendants apparently concede that two of these examples—organization charts and a proposed reprimand letter—were not compiled for law enforcement purposes. Opp. 28–29 (citing Ebadolahi Decl., Exs. M-1 & J-4). These exemplary documents, and Defendants' apparent concessions about them, suffice to discredit Defendants' generalized claim that each and every redacted record withheld under Exemption 7 was compiled for law enforcement purposes.[25] Defendants argue that Plaintiffs' third example "facially involve[s] law

---

[25] In numerous other instances, Defendants have redacted agency officials' names from records compiled for purely administrative purposes, or for internal monitoring and supervisory purposes. Filing every such document for judicial review would exhaust the Court's limited time and resources. Nevertheless, to

enforcement purposes." Opp. 28 (citing Ebadolahi Decl. Ex. P at 336–39). These records, however, reflect internal monitoring and supervision of CBP employees. Defendants proffer no additional evidence about these records' preparation or purpose, and fail to distinguish the cases holding that such internal supervisory documents are *not* "compiled for law enforcement purposes," even when they pertain to law enforcement officials' performance. *See, e.g.*, *Varville v. Rubin*, No. CIV 3:96CV00629AVC, 1998 WL 681438, at *6 (D. Conn. Aug. 18, 1998); *Greenpeace USA Inc. v. EPA*, 735 F. Supp. 13, 15 (D.D.C. 1990).

Defendants have not satisfied Exemption 7's threshold requirement.

### 3. Defendants Improperly Failed to Balance Competing Interests.

Even where the threshold inquiries are satisfied, agencies may withhold information only if disclosure would effect "an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), (b)(7)(C). Courts must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *State v. Ray*, 502 U.S. 164, 175 (1991) (quotation marks and citation omitted).

Defendants' own admissions, as well as the broad sweep of their withholdings, demonstrate that they have made no attempt to weigh the privacy interests in the withheld names against the public interests in disclosure. Instead, Defendants apparently withheld all names of CBP officials from all records, except for names volunteered in the public domain or widely known by the public. Opp. 31. Yet simply determining whether names are already in the public domain is no substitute for considering, in context, whether there is a privacy interest weighty enough to counterbalance the public's interest in disclosure.

As a result of their flawed methodology, Defendants have withheld the

respond to the criticism that Plaintiffs cited only a "handful of records" contradicting Defendants' Exemption 7 claims, Plaintiffs provide additional examples in reply. *See* Supp. Ebadolahi Decl. ¶ 3 & Ex. S.

names of CBP officials where the privacy interests served by doing so, if any exist, are exceedingly minimal. *See generally* Ebadolahi Decl., Ex. L. Release of the vast majority of the withheld names would reveal nothing more than the fact of the officials' employment and their conduct of agency business. *Compare id.*, with *Law. Comm. For Hum. Rts. v. INS*, 721 F. Supp. 552, 569 (S.D.N.Y. 1989) (agency improperly withheld portions of documents stating the names of officers and staff, because disclosure that merely establishes agency officials' "professional relationships or associates [them] with agency business" "is not detrimental").[26]

Defendants withhold even the names of senior and supervisory officials, who have especially diminished privacy interests. *See, e.g.*, *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998); *Hardy v. Defense*, No. CV-99-523-TUC-FRZ, 2001 WL 34354945, at *9 (D. Ariz. Aug. 27, 2001) (citing *Sullivan v. Veterans Admin.*, 617 F. Supp. 258, 261 (D.D.C. 1985)). Plaintiffs have shown that senior CBP officials make public statements attributed to them; that the government identifies them by name in official publications; and that members of the public know them and correspond with them by name. Ebadolahi Decl. ¶¶ 20, 22, Exs. M-2, O. Defendants have released the names of some of these officials, even while they withhold the names of other officials who hold the same or similar titles. The record thus shows that senior CBP officials have little expectation of privacy in their names or in the fact of their employment. For all of these reasons, Defendants cannot meet their burden to establish that senior CBP officials have more than nontrivial privacy interests in the withholding of their names.

---

[26] Defendants suggest that disclosing the mere fact of agency employment will lead to harassment or embarrassment, but they produce no evidence establishing that disclosure would lead to such an outcome. *Cf.* CMSJ 33 (citing cases). Moreover, the speculative possibility of embarrassment is insufficient to overcome the public interest in government transparency. *See* Presidential Memorandum for Heads of Executive Departments and Agencies Concerning the Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 21, 2009) ("The Government should not keep information confidential merely because public officials might be embarrassed by disclosure . . . or because of speculative or abstract fears.").

There is no legal basis for Defendants' suggestion that law enforcement officials' privacy interests presumptively override the public's interests in disclosure. Rather, the privacy interests of government officials, including law enforcement officials, are diminished under FOIA. *See, e.g.*, *Lissner v. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) ("[T]he privacy interests of McColgan and Charles are not strong in this case. [They] are not ordinary citizens; they are public law enforcement officers."); *see also* CMSJ 32 (collecting cases).

None of the cases Defendants cite support their contention that the names of federal law enforcement officials are automatically entitled to special privacy protection. Opp. 29. In *Lahr*, the Ninth Circuit acknowledged that the privacy interests of law enforcement agents "are somewhat *reduced*." 569 F.3d at 977 (emphasis added). Similarly, in *Nix v. United States*, the court observed that the privacy interests of the FBI agents in their names were "minimal." 572 F.2d 998, 1006 (4th Cir. 1978). In *Long v. Office of Pers. Mgmt.*, the court recognized that disclosure of law enforcement officials' "[n]ames and other identifying information [does] not *always* present a significant threat to [their] privacy interest." 692 F.3d 185, 191 (2d Cir. 2012) (quoting *Wood v. FBI*, 432 F.3d 78, 88 (2d Cir. 2005)); *accord New England Apple Council v. Donovan*, 725 F.2d 139, 143–44 (1st Cir. 1984) (OIG investigators' privacy interest in names "is not the sort of intimate detail or extremely compromising fact that would create a substantial barrier to disclosure" in Exemption 6 and 7(C) balancing).

In each of the cases Defendants cite, the court held that the withholding of law enforcement officials' names was proper only *after* determining that there was little to no public interest in disclosure. *Long*, 692 F.3d at 195 ("no appreciable public interest"); *Wood*, 432 F.3d at 89 ("public interest . . . negligible"); *Manna v. DOJ*, 51 F.3d 1158, 1166 (3d Cir. 1995) (plaintiff failed to assert "any public interest"); *New England Apple*, 725 F.2d at 144 (no public interest other than "mere

curiosity").[27] The courts emphasized that the officials' privacy interests in their names could in a different case "be overborne by the legitimate interest of the public," *Nix*, 572 F.2d at 1006, because "the public has a significant, enduring interest in remaining informed about actions taken by public officials in the course of their duties." *New England Apple*, 725 F.2d at 144 (no "absolute bar" to disclosure of law enforcement personnel names).

Here, the public interests Plaintiffs identify outweigh any minimal privacy interests. CMSJ 34. Disclosure of the withheld names will illuminate how or whether CBP holds its agents accountable for public complaints and substantiated allegations of misconduct.[28] The public interest in such information is strong, especially in light of well-documented CBP abuses. *See* CMSJ 1–3. Disclosure would therefore serve weighty public interests at the heart of FOIA's purpose. *See Casa de Md., Inc. v. DHS*, 409 F. App'x 697, 700–01 (4th Cir. Jan. 31, 2011); *Schmidt v. Air Force*, No. 06-3069, 2007 WL 2812148, at *11 (C.D. Ill. Sept. 20, 2007).[29]

---

[27] *See also Hunt v. FBI*, 972 F.2d 286, 290 (9th Cir. 1992) ("little or no public interest"); *Brown v. DOJ*, No. 1:13-CV-01122-LJO, 2015 WL 1237274, at *11 (E.D. Cal. Mar. 17, 2015) (plaintiff "failed to assert any *public* interest"); *Salas v. OIG*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) (plaintiff's *personal* interest in disclosure did not outweigh agency employees' privacy interests in their names as associated with, *inter alia*, addresses, phone numbers, social security numbers, dates of birth, and pay plans).

[28] Defendants contend that knowing that documents were sent to or from various *kinds* of officials is more important than knowing those officials' *names*. But release of the withheld names is necessary, *e.g.*, to identify whether similar instances of misconduct happened repeatedly under the same official's watch (as opposed to under the supervision of a different official bearing a similar title), and to shed light on how supervisory officials react to emerging patterns of abuse.

[29] Plaintiffs have presented examples of redacted documents related to troubling, publicly-reported instances of misconduct involving CBP officials, Ebadolahi Decl., Ex. P at 336–38, as well as complaints from organizations and individuals about repeated abuses and mistreatment of the public. *Id.*, Exs. J, L, O. The public interest in CBP's handling of these incidents is evident. Defendants ignore these examples, focusing instead on documents that Plaintiffs present in support of other points. For instance, Plaintiffs cite a letter regarding improper disposal of marijuana cigarettes to challenge Defendants' blanket assertion that all of the withheld names are from records "compiled for law enforcement purposes"; this record pertains to internal supervision, not enforcement of any law, as Defendants apparently

**III.    Defendants Have Not Disclosed Reasonably Segregable Material.**

Finally, CBP has failed to disclose reasonably segregable material from the 1133-page ELC, the Border Patrol Academy records, and the various other memoranda challenged herein. CMSJ 26–27.

Attempting to evade FOIA's clear segregability requirement, 5 U.S.C. § 552(b), Defendants try to undermine Plaintiffs' reliance on *Mead Data Central, Inc. v. Air Force*, 566 F.2d 242 (D.C. Cir. 1977). Defendants cite a D.C. district court case, *Muttitt v. State*, 926 F. Supp. 2d 284, 310 (D.D.C. 2013), for the proposition that the *Mead* standard on segregability "has been relaxed." Opp. 24. Notwithstanding the district court's musings in *Muttitt*, however, *Mead* remains good law. *See, e.g.*, *NACDL v. Justice*, ___ F.3d ____, 2016 WL 7377218, at *7 (D.C. Cir. 2016) (applying *Mead*). Defendants fail to satisfy *Mead*'s requirements.

Even if a "relaxed" segregability test applied, Defendants' paltry submissions are insufficient. The *Muttitt* court explained that "an agency may satisfy its segregability obligations by (1) providing a *Vaughn* index that *adequately* describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." 926 F. Supp. 2d at 310. Given the deficiencies in Defendants' *Vaughns*, even this "relaxed" standard—were it actually operative—would not be met.[30] As noted, moreover, Defendants entirely ignore the *Fiduccia* rule—binding on this Court—that where a document is withheld in its entirety, a more detailed *Vaughn* justification is required. 185 F.3d at 1043. For all these reasons, Defendants'

_____

concede. Opp. 28. Similarly, Plaintiffs cite documents redacting the name of a Senior Information Officer to demonstrate that the withheld names include those of senior individuals who regularly interface with the public, and thus have limited expectations of privacy in the fact of their employment. Ebadolahi Decl., Ex. N.

[30] In *Muttitt*, the court concluded that an agency *Vaughn* that described an email chain as "contain[ing] attorney client privileged information" was inadequate. 926 F. Supp. 2d at 309–10. Here, Defendants' conclusory, single-sentence justifications to withhold literally thousands of pages of documents are likewise deficient.

defective submissions are inadequate to satisfy the FOIA segregability standard.[31]

## IV. Disclosure of the Withheld Documents, or *In Camera* Review, Are The Appropriate Remedies.

Defendants proclaim a right "to submit a more detailed declaration or *Vaughn*" should this Court hold their submissions to date insufficient. Opp. 14–15. Defendants misunderstand the law. Their failure to shoulder their burden of proving their withholdings are lawful entitles Plaintiff to summary judgment now. Defendants should not be permitted to thwart Congressional intent and waste any more of this Court's or Plaintiffs' time, having already obstructed public access to critical government information for more than *two years*. As Defendants have not shouldered their burden under FOIA, the withheld documents should be released. Alternatively, at a minimum, this Court should undertake an independent *in camera* assessment of the withheld documents. 5 U.S.C. § 552(a)(4)(B).

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion for summary judgment and grant Plaintiffs' cross motion.

DATED:  January 6, 2017                    Respectfully submitted,

                                          ACLU FOUNDATION OF SAN DIEGO &
                                          IMPERIAL COUNTIES

                                          **By /s/ Mitra Ebadolahi**
                                          Border Litigation Project
                                          Staff Attorney

---

[31] Defendants' reliance on *Hamdan* is misplaced; there, the Ninth Circuit simply stated that, in assessing segregability, "a district court is not required to conduct an independent review of each withholding *unless an agency declaration lacks sufficient detail* or bears some indicia of bad faith by the agency." 797 F.3d at 779 (emphasis added). Where, as here, the government's submissions *are* insufficiently detailed, it is reversible error for a district court to grant summary judgment without *de novo* assessment of segregability. *Id.* at 780–81 (vacating and remanding with instructions for the district court to determine "whether there is any content that can be segregated from the exempt information and turned over to Plaintiffs").